Ulysses JONES, Jr., Appellant,

v.

UNITED STATES, Appellee.

Gregory A. BRITT, Appellant,

v.

UNITED STATES, Appellee.

Nos. 83–171, 83–174.

District of Columbia Court of Appeals.

Argued April 12, 1984.

Decided Oct. 2, 1984.

---

Richard S. McMillin, Washington, D.C., for appellant Jones.

Mark S. Carlin, Public Defender Service, Washington, D.C., with whom James Klein, Public Defender Service, Washington, D.C., was on brief, for appellant Britt.

Daniel S. Seikaly, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Harold Cushenberry, Jr., Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before BELSON and ROGERS, Associate Judges, and KERN, Associate Judge, Retired.*

KERN, Associate Judge, Retired:

A jury convicted appellants of first degree murder while armed (felony murder) and armed robbery based upon their slaying a store owner in Southwest Washington and robbing his store and one of his customers.[1] There was testimony from eyewitnesses that appellants, one of whom was carrying a pistol, were outside the victim's store and made inquiries about it, as well as several others in that block. Appellants then entered this particular store and fatally shot the victim with a shotgun, struck an employee in the head with a pistol, pulled the victim's sister-in-

---

* Judge Kern was an Associate Judge of the court at the time this case was argued. His status changed to Associate Judge, Retired, on May 25, 1984.

1. D.C. Code §§ 22–2401, –3202, and §§ 22–2901, –3202 (1981).

law by her hair and forced her to open the cash register and rifled it, and then took a portable radio belonging to a customer who had left it on the floor when raising his hands and facing the cash register.

Police recovered a shotgun from a truck registered to appellant Jones and matched such weapon with the shell casing recovered from the store where the murder and robbery took place. In addition, a police informant testified that appellant Britt had recounted shooting a person during the robbery of a store.[2]

We consider the contentions by appellants. Both appellants contend that the trial court erred by failing to instruct appropriately the jury on their so-called "afterthought" defense. Appellants' argument is that the felony murder indictment required the murder to have been committed in the course of *two* armed robberies—that of the murder victim and of the radio owner. They argue that there was sufficient evidence that their intent to steal the radio was formed *after* the shooting of the victim, and so the robbery of the customer was an afterthought. Appellants maintain that the jury should have been instructed that if they found that the theft of the customer was an afterthought, in that appellants did not have the intent to rob the victim of his radio until after the shooting of the deceased, then appellants were entitled to an acquittal on the felony murder count.

■ We do not agree that the evidence presented at trial entitled appellants to their requested "afterthought" instruction. The trial court correctly instructed the jury on the law; that in order to return a guilty verdict on the felony-murder count, they had to find beyond a reasonable doubt that the killing took place while the appellants "perpetrated or attempted to perpetrate

*both* robberies, and that the killing of Mr. Park, if committed by these defendants, occurred in the course of perpetration or attempt to perpetrate *the two* robberies." (Emphasis added).

The facts establish a continuous joint venture by appellants. The record shows that appellants entered the store armed, Britt with a shotgun and Jones with a pistol. One of the robbers shouted "don't move" and at that moment an employee walked towards the front of the counter. Appellant Jones struck him in the head with his pistol. Jones then went to the cash register. Next, appellant Britt shot and fatally wounded Park. Then appellant Jones pulled a female employee by the hair from behind the counter to open the cash register. Mr. Brown, the radio owner and then a customer in the store, was facing the cash register with his hands up. Appellant Jones emptied the cash register, jumped across the counter and grabbed Mr. Brown's radio before leaving the store. Thus, there was no break in the continuity of events, or any indication that the theft of the radio was an act independent of the robbery. The evidence in our view establishes that appellants were engaged jointly in the perpetration of a "general hold-up," *Coleman v. United States,* 111 U.S.App. D.C. 210, 215, 295 F.2d 555, 560 (1961), *cert. denied,* 369 U.S. 813, 82 S.Ct. 689, 7 L.Ed.2d 613 (1962), which encompassed both the store itself and any other victims they chose to rob while inside. *Cf. Wheeler v. United States,* 82 U.S.App.D.C. 363, 367, 165 F.2d 225, 229 (1947), *cert. denied,* 333 U.S. 829, 68 S.Ct. 448, 92 L.Ed. 1115 (1948) (robbery in the rear of the store and in the front of the store was a single joint venture). Based on the facts, the trial judge's instruction that the murder had to have occurred in the course of both robber-

---

**2.** There were two pretrial matters that produced judicial proceedings: the first resulted in an order by the trial court imposing sanctions upon the use of evidence by the prosecution which resulted in a government appeal to and reversal by this court. *United States v. Jones,* 438 A.2d 444 (D.C.1981), *cert. denied,* 456 U.S.

918, 102 S.Ct. 1776, 72 L.Ed.2d 178 (1982); *United States v. Britt,* 438 A.2d 444 (D.C.1981), *cert. denied,* 456 U.S. 935, 102 S.Ct. 1992, 72 L.Ed.2d 455 (1982). The other pretrial proceeding consisted of suppression and severance motions by appellants which the trial court denied after various hearings.

ies correctly presented the issue to the jury and an "afterthought" instruction was not appropriate.

■ Second, appellant Jones argues that the trial court erred in admitting the identification testimony of three witnesses. We find this to be without merit. We will assume *arguendo* that the pre-trial identification procedures were unnecessarily suggestive. Nevertheless, and as the trial court found, the totality of circumstances supports a conclusion that each resulting identification was reliable. *See Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Johnson v. United States,* 470 A.2d 756, 758–59 (D.C.1983). As the trial court noted, Mr. Oh focused on appellant, and the lighting was good. The court found that Mr. Kim had time to observe appellant in good lighting and was able to give a description. Finally, Mr. West stood about 35 feet away from appellant and had opportunity to observe him.

■ Third, appellant Jones argues that the trial court erred by denying his motion to dismiss the indictment on speedy trial grounds. Appellant argues that because of the 34-month delay between his arrest and trial that his Sixth Amendment right to a speedy trial was violated. However, a showing of more than mere delay is necessary to establish a constitutional violation. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972). In *Barker,* the Supreme Court formulated a balancing test and identified the following four factors for analyzing a speedy trial claim: (1) the length of the delay; (2) the reasons for delay; (3) defendant's assertion of his right; and, (4) the resulting prejudice to the defendant. *Id.*

■ The trial judge had assessed appellant's speedy trial claim in this and a related case.[3] This court's duty then is to review the trial court's decision, "assessing evidentiary support for the facts that have been determined respecting for example, reasons for delay, good faith in assertion of

the right, and presence or absence of prejudice from delay." *Reid v. United States,* 402 A.2d 835, 837 (D.C.1979). We set forth below the trial judge's speedy trial ruling in the instant case:

"The defendant was arrested in this case on February 16, 1980, for the December 13, 1979, shooting death of Boo Yeal Park.

"The defendant had previously been arrested on February 5, 1980, for the January 11, 1980, murder of Secret Service Agent George Coaxum, but had been released on bond.

"Indictments for both murders were filed on April 23, 1980—one against Defendant Jones and Gregory Britt for the Park killing and another against Defendant Jones and Ricky Bryant for the Coaxum murder.

"At that time, the case was before Judge Bacon. During September, 1980, she ordered the Government to submit to the Court for an in camera inspection of all statements made by either of the defendants to third parties. She then ordered the Government to serve counsel for each defendant with a copy of these materials and on October 1, 1980, when the Government refused to comply with her orders, she sanctioned the Government by suppressing all oral statements made by defendants to third parties.

"Ultimately the Government appealed both the Jones and Bryant cases as well as the Britt case but the Government chose not to appeal this particular Jones case that is before the court in which he was a co-defendant with Mr. Britt. . . .

"The Government indicated to the court its intent not to appeal the Jones case for the Park killing and at the same time withdrew its objection to severance of the Jones and Britt cases. However, Judge Bacon denied severance.

"The other cases went up on appeal and without the severance and because of the overlapping issues involved in all four cases, Defendant Jones' case for the Park

---

3. *Jones v. United States,* D.C.C.A. Nos. 82–1360    and 82–1370 (appeal pending.)

killing awaited the outcome of the appeals process.

"Status hearings were held periodically throughout 1981 by this court to which the cases had been assigned on October 1st, 1980.

"On November 12, 1981, the Court of Appeals issued its opinion reversing the trial court's orders. A petition for rehearing en banc, as well as a petition for Writ of Certiorari to the Supreme Court was denied on March 19, 1982, and March 25, 1982, respectively.

"The Government elected to try the Jones/Bryant case first. Defendant Jones was tried and found guilty of felony murder, armed robbery and carrying a pistol without a license on July 9, 1982.

"Sentencing was set for September 16, 1982, and with the concurrence of defendant, a trial date was not scheduled for the Britt/Jones case until the court had imposed its sentence on Mr. Jones for the Coaxum killing.

"Following the sentencing of Defendant Jones on September 16, a trial date of November 8, 1982, was originally set and then continued until November 30, 1982.

"On December 9, 1982, Defendant Jones was convicted of first degree murder while armed, two counts of armed robbery and assault with a dangerous weapon.

"In considering defendant's motion, the court should first point out that in the Jones/Bryant case, Defendant Jones filed a similar motion ... and on August 4, 1982,

this court issued a memorandum opinion and order denying that motion.

"Because the procedural histories of the two cases since the time of the indictment are almost identical and since even the murder dates and arrest dates are extremely close, the court has determined that it can rely on its [August] 4, 1982, order and the rationale in that order.

"That order details the time periods and basis for denying defendants' motion in the Jones/Bryant case.[4]

"The Court adopts that analysis for this, the Jones/Britt case, and it will simply add that the four additional months it took for the case to go to trial does not change the analysis of the time periods.

"Specifically, as to those four months, the court finds since the defendant chose not to set a trial date until after his sentencing in the Coaxum murder case, the first two months of additional delay cannot be charged to the Government.

"The second two months are attributable to normal court delay in attempting to set a date convenient for all parties and even though chargeable to the Government, should not weigh heavily against them.

"As to any prejudice to the defendant in this particular case, the Court, now having heard the evidence at trial, finds that there is not sufficient specific prejudice to warrant relief on that ground.

"The defendant has alleged prejudice due merely to general anxiety, incarceration and diminished recollections of witnesses—

---

**4.** The trial court's August 4 order in *Jones and Bryant v. United States*, Nos. 82–1360 and 82–1370, contains an analysis of the reasons for the 29-month delay between arrest and presentment and trial in that case: the court determined that all but three weeks of the eight months between arrest and presentment and the government's notice of appeal from the order of disclosure, was "normal" and not the fault of either side; the court, applying *Day v. United States*, 390 A.2d 957 (D.C.1978), determined that of the thirteen months expended on the appeal, five months and one week should be charged against

the government because it did not move to expedite the appeal until then; and, it determined finally that of the seven months between the appellate decision, *viz., United States v. Jones, supra,* and the commencement of the Coaxum murder trial, six months were charged to the defense and one month to normal and routine institutional delay.

Accordingly, the trial court concluded that "out of the 29 months that elapsed between defendants' arraignment and trial, a total of six months must be counted significantly against the government."

all insufficient, non-specific claims as I outlined in my other order.[5]

"Therefore, the court holds that defendant's motion to dismiss the indictment for lack of speedy trial is denied."

■ We find sufficient evidence in the record to support the trial court's findings with regard to the reasons for the delay, appellant's assertion of his right, and the lack of prejudice. Moreover, the trial court has made a correct legal analysis. *See Reid v. United States, supra,* 402 A.2d at 839, and we agree that only eight months of the 33 months elapsing between arrest and trial are the result of the governmental delay. We also agree that six months were the responsibility of the defense in seeking further appellate review and then delaying the trial of this case until sentence had been imposed upon appellant Jones in the Coaxum murder case; and, that the balance of the delay was due to the routine trial process and the interlocutory appeal. While appellant Jones claims that certain witnesses had lapses in memory, we note that there was sufficient independent evidence to make up for these so called "lapses." Moreover, the delay did not hinder appellant's ability to investigate and preserve testimony of witnesses. *See Smith v. United States,* 379 A.2d 1166, 1167 (D.C. 1977).

Under these circumstances we reject the argument by appellant Jones that reversal is required on speedy trial grounds.

Fourth, appellant Britt argues that the trial court erred in excluding the hearsay testimony of a deceased witness, McKinley Berry. Mr. Berry was an eyewitness to the crimes and gave the police a statement, including a description, and viewed a photographic array containing Britt's photo but did not select Britt as one of the robbers; and Mr. Berry attended a line-up which included appellant Britt, but tentatively identified another man. However, Mr. Berry did identify appellant Jones from a photograph of a line-up. Mr. Berry testified before the grand jury, adopted his statement given on the night of the murder and explained his photographic identification of appellant Jones. By the time of trial, however, Mr. Berry had died.

Appellant Britt sought to introduce evidence of Mr. Berry's misidentification, including both the grand jury testimony and the out-of-court identification procedures. In other words, appellant Britt sought to introduce Mr. Berry's grand jury testimony relating his observations of the robbery, so he (Britt) could argue that Mr. Berry's subsequent failures to identify appellant created the inference that he was not one of the men Mr. Berry saw participating in the robbery. The grand jury testimony, he argues, "was necessary to establish that he was present at the market and had some opportunity to view the robbers, the predicate foundation for admission of other evidence about the line-up procedures."

Appellant Britt further claims that the grand jury testimony comes within the prior recorded testimony exception to the hearsay rule, and that the identification procedures involving Mr. Berry are admissible under the hearsay exception for pretrial identification. According to appellant, "the sum of the hearsay evidence was admissible because its two integral parts—the Grand Jury testimony and the evidence relating to out-of-court identification procedures—were each independently admissible under distinct exceptions to the hearsay rule...."

Considering first the trial court's ruling regarding the out-of-court identification procedures, appellant Britt argues that the evidence should have been admitted because the declarant was available for examination by the government at the grand jury. In *Clemons v. United States,* 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968) (en banc), *cert. denied,* 394 U.S. 964, 89 S.Ct.

---

5. In the trial court's August 4 order in *Jones and Bryant v. United States,* Nos. 82–1360 and 82–1370, Judge Ugast points out that appellant Jones did *not* argue any prejudice accruing from his pretrial incarceration and that his assertion of being "upset or concerned about a criminal charge is insufficient to justify a finding of prejudicial delay."

1318, 22 L.Ed.2d 567 (1969), this jurisdiction adopted the prior identification exception permitting introduction of an out-of-court identification made by a witness *who testified at trial.* The federal circuit court determined that "the rationale behind the exclusion of hearsay evidence has little force in the case of witnesses, such as those here involved, who are available for cross-examination." *Id.* at 40, 408 F.2d at 1243. In *Morris v. United States,* 389 A.2d 1346 (D.C.1978), this court expanded the exception to include out-of-court description testimony, applying the rationale of *Clemons* that the description testimony "was subjected to thorough cross-examination at trial for errors and inconsistencies." *Id.* at 1351. *See also Rice v. United States,* 437 A.2d 582, 583 (D.C.1981) (per curiam) (because of "the presence at trial of the victim and his availability for cross-examination ... the trial court correctly admitted the testimony of the officer as to the victim's pretrial out-of-court identification of appellant....").

■ We do not agree that the trial judge abused his discretion in finding the presence of the declarant, Mr. Berry, at the grand jury an insufficient opportunity for cross-examination and in excluding such evidence at trial. The witness was before the grand jury for the limited purpose of establishing that two robberies and a murder took place at the Fort Drum Market, that a radio was taken in the course of those events, and that he recognized appellant *Jones* as one of the robbers. Under these circumstances, the trial judge was within his discretion in finding that the opportunity for cross-examination at the grand jury was not a substitute for the opportunity to cross-examine the witness at trial.

■ Moreover, we do not agree that the Supreme Court's holding in *Chambers v.*

*Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), compels that the identity evidence be admitted. Here, the trial court found, and we agree, that the inability of the witness to identify appellant Britt from a photo array and his tentative misidentification at the line-up are not so exculpatory that its exclusion violated appellant's right to due process. Furthermore, the trial judge noted that he was not mechanically applying the rules of evidence but in fact determining that without cross-examination at trial the evidence was not trustworthy.

■ The trial judge did not abuse his discretion in excluding the out-of-court identification procedures; therefore, any error in excluding the grand jury testimony of the witness is harmless. This is because appellant Britt concedes that he sought to introduce the grand jury testimony by Mr. Berry only to serve as the foundation for the admission of the out-of-court identification. "His purpose in offering the Grand Jury testimony was to enable the trial jury to hear Berry's own sworn description of the events inside the market and of the perpetrators of the robberies and murder. Without that evidence, it made little sense to offer at trial the other hearsay evidence relating to Berry's failures to identify Britt and his identification of another person as the robber in the doorway ...." Thus, because the grand jury testimony is simply a foundation for the properly excluded identification evidence, its exclusion, if error, was harmless error.[6]

■ Fifth, appellant Jones argues that the trial court erred in denying his motion to sever his trial from that of Britt. A motion for severance is in the sound discretion of the trial court, and a denial is reviewable only for a "manifest abuse of

---

**6.** The present case is distinguishable from *Alston v. United States,* 383 A.2d 307, 314–15 (D.C. 1978), where the testimony given under oath by an unavailable declarant at an earlier proceeding contained *exculpatory* evidence. Here, the deceased witness' testimony before the grand jury at best served only to lay a foundation for

an asserted prior misidentification which was not itself admissible. In short, the prior recorded testimony of Mr. Berry did not exculpate appellant. In *Alston,* unlike the instant case, the "relevant, facially exonerating and admissible prior recorded testimony ... constituted [Alston's] only defense." *Id.* at 315.

discretion." *Roldan v. United States,* 353 A.2d 292, 294 (D.C.1976). While a joint trial is favored, a trial court may sever defendants for separate trials if it concludes that the resulting prejudice to the accused outweighs the judicial economy to be derived from a joint trial. *Johnson v. United States,* 398 A.2d 354, 367 (D.C. 1979); *see also Leasure v. United States,* 458 A.2d 726, 728–29 (D.C.1983) (per curiam).

██ Appellant claims that he was prejudiced at the joint trial by the reaction of a statement eliminating a reference to his codefendant Britt. Specifically, following his arrest, appellant Jones made a statement to the police in which he claimed that he bought the radio (found by police in his room) from "a guy by the name of Britt." The trial court ruled that the statement could be introduced at trial, but ordered the reference to Britt redacted. Jones argued for severance by the trial court on the ground that the redaction would convert his plausible explanation of possession of the radio into a "completely unexplained possession of recently stolen property." In response to this objection, the trial court permitted counsel to establish that Jones had given police officers the *name* of the person who sold him the radio. We find that this ruling by the trial judge, accommodating the competing interests, was within the trial judge's discretion. *See Carpenter v. United States,* 430 A.2d 496, 501–503 (D.C.) (en banc), *cert. denied,* 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981).[7]

██ Finally, appellant Britt argues that the trial court erred in not declaring a mistrial when the prosecutor asked the government's witness Smith if he had taken notes of his conversation with Britt.[8]

Appellant contends that the question improperly bolstered Smith's unimpeached testimony with a prior consistent statement. Appellant analogizes to decisions holding that so-called Jencks requests should be made outside the presence of the jury so that the jury will not infer improperly from the failure of the defense to impeach with the statements that they are consistent with the witness' testimony. *Gregory v. United States,* 125 U.S.App. D.C. 140, 146, 369 F.2d 185, 191 (1966). *See Washington v. United States,* 397 A.2d 946, 951 (D.C.1979). We agree that the prosecutor erred in asking the *unimpeached* witness if he had notes in the presence of the jury. However, the record reflects no other mention of the notes. We do not believe that in this case the trial judge abused his discretion in denying appellant Britt's motion for a mistrial on this ground.

*Affirmed.*

7. Appellant Jones' related argument, *viz.,* that the trial court erred in not allowing him to introduce evidence that appellant Britt was selling clothes from a hotel room, is without merit. The government had presented evidence that both Britt and Jones were seen together at the hotel as tending to show that they knew one another. Jones wanted to show that there was a substantial amount of new goods in the hotel room. The trial judge correctly ruled that the evidence lacked relevance, not that he needed to protect Britt from other crimes evidence.

8. Smith testified that while they both were incarcerated at the D.C. Jail Britt told Smith about the robbery and murder.