Melvin THOMAS, Appellant,

v.

UNITED STATES, Appellee.

No. 84–1647.

District of Columbia Court of Appeals.

Argued Sept. 17, 1986.
Decided Aug. 10, 1987.
Rehearing En Banc Granted and Opinion Vacated Oct. 29, 1987.

Thomas Abbenante, appointed by this court, for appellant.

David Schertler, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Before FERREN and STEADMAN, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

Appellant Thomas was convicted by a jury of felony murder, D.C.Code § 22–2401 (1981), armed robbery, *id.* §§ 22–2901, –3202, and carrying a pistol without a license, *id.* § 22–3204. He was sentenced to serve thirty years for the felony and misdemeanor offenses pursuant to the Federal Youth Corrections Act, 18 U.S.C. § 5010(c) (1982). The issue on appeal is whether the court erred in permitting the prosecutor to introduce at trial a witness' prior recorded testimony. We reverse.

In the early afternoon of November 5, 1981, William Michael Reed was shot to death in an alley in the area of 11th and O Streets, Northwest. Reed had been shot twice, once in the head and once in the back at close range with either a .38 caliber or a .357 caliber magnum revolver.

### 1. *The Prior Testimony*

Appellant's argument on appeal centers around the testimony of former codefendant Leroy Farley. At the time of appellant's trial, Farley was serving a prison sentence of twenty years to life for a different murder conviction. Farley was an eyewitness to Reed's murder and was originally charged in the offense along with Myrick, Hawthorne, and appellant. In exchange for not being prosecuted for his role in the events leading up to this case, Farley entered into an agreement with the government to testify against the remaining codefendants involved in Reed's murder, and to plead guilty to an unrelated felony murder case. Pursuant to this agreement, he testified in the earlier trial of codefendants Myrick and Hawthorne. *See Hawthorne v. United States,* 504 A.2d 580 (D.C.1986).

As soon as Farley was brought into the courtroom during appellant's trial, however, his behavior, as observed by counsel for appellant and the government, as well as the court, was described as "peculiar." In response to a few simple preliminary questions by the trial court outside the jury's presence, Farley denied that he remembered anything about the murder of Reed. Defense counsel requested a forensic screening of Farley to determine whether he was competent to testify. A psychiatrist examined Farley and found him not competent to testify, but recommended further examination. The prosecutor, however, contacted the federal prison authorities in Springfield, Missouri, where Farley was incarcerated, and represented to the court that Farley was alert and coherent in

speech and thought and displayed no evidence of significant mental illness.

Based on the prison medical report, as well as its observation of Farley's behavior, the trial court concluded that Farley was deliberately feigning lack of memory or mental illness in order to deceive the court about his competency, and thus to avoid testifying in appellant's case. The court found Farley to be a competent witness, and he was called as a government witness before the jury. After extensive questioning by the prosecutor, however, it became apparent that Farley would not admit to having any memory or knowledge of Reed's shooting. He denied knowing anything about the crime or any of the participants, whom he had previously identified at the trial of Myrick and Hawthorne. He even stated that he could not remember the earlier trial. To almost every question the prosecutor asked, even simple questions about why he was currently in prison, Farley either denied that he knew or claimed that he did not remember.

When it became clear that he would not cooperate as a witness and that further questioning was futile, the prosecutor requested the court's permission to treat Farley as a hostile witness in order to impeach him with his prior recorded testimony, and that in the event Farley persisted in denying any recollection of the past events, that the trial court make a determination that Farley was unavailable as a witness and allow the transcript of Farley's prior testimony at the trial of Myrick and Hawthorne to be read to the jury. Defense counsel objected to the latter request on the ground that appellant did not have the opportunity to cross-examine Farley at the earlier trial.

Before determining that Farley was unavailable as a witness, the trial court once again directed him to take the stand to be questioned by the prosecutor. Again Farley denied recollection either of the events and circumstances surrounding Reed's murder or of his prior testimony. Consequently, the trial court ruled that because Farley either had no recollection of the facts and circumstances relating to the case or was feigning lack of memory, he was unavailable as a witness. The trial court then ruled, over defense counsel's further objections, that the government would be permitted to introduce portions of Farley's prior recorded testimony, on both direct and cross-examination, given at the trial of Myrick and Hawthorne. The court also ruled that the government could not introduce those portions of Farley's prior recorded testimony that made any reference whatever to appellant.

Farley's prior testimony, as introduced in evidence and read to the jury, revealed that on November 5, 1981, the day Reed was shot, Farley was in the area of 11th and O Streets, Northwest. In the early afternoon, he met with Myrick and Hawthorne, at which time Myrick told them that he was "going to pull a stunt on Big Mike," meaning that he was going to rob William Reed. Hawthorne agreed to go along with Myrick, and the pair walked over to Reed. Out of curiosity, Farley followed Myrick and Hawthorne as they, along with Reed, entered an alley that opened out onto O Street. Farley was in the alley when he saw Myrick pull out what he believed to be a .38 caliber pistol and Hawthorne pulled out a .357 caliber handgun. Myrick ordered Reed not to move and began searching through his pockets. Farley saw Myrick take money and a brown bag from Reed. As Myrick ordered Reed to lay face down on the pavement, Reed pleaded with them not to kill him. Farley observed Myrick place his pistol against the back of Reed's head and fire a shot. Farley immediately ran out of the alley, but heard two more shots as he did so. In his haste to get out of the alley, he saw nothing more.

Portions of Farley's prior testimony that referred to appellant were supposed to be excluded from the reading of the transcript; however, two questions during cross-examination, in which Farley stated that "Melvin" did not walk with the victim into the alley when Reed was shot, were in fact read to the jury.

In his direct testimony, Farley stated that he had entered into an agreement with the government whereby he agreed to

plead guilty to felony murder in an un-related case in exchange for his testimony in the case involving Reed's murder and for not being prosecuted in that case.

The entire cross-examination of Farley by attorneys for Myrick and Hawthorne was also read to the jury. He was exten-sively cross-examined by both attorneys: he was questioned on his use of PCP and heroin, and his selling of drugs; his credi-bility was attacked by means of his prior criminal record, including two prior felony murder convictions; and, through leading questions, counsel for Myrick implied that Farley and Hawthorne were the persons who had conceived the idea to rob Reed, while counsel for Hawthorne implied that Farley had actually shot Reed. Counsel also explored in detail Farley's ability to observe the shooting and to recall the events correctly.

Through cross-examination, defense counsel had extracted from Farley the ad-mission that he was testifying because of the deal he had struck with the govern-ment. He was questioned pointedly about his failure to say anything about the shoot-ing before that deal was arranged, and every detail of the bargain was explored, including the charges he had pending against him at the time, his maximum expo-sure to time in prison as a result of the charges, the strength of the government's case against him, and the extent to which his prison exposure was reduced in ex-change for his testimony.

Appellant argues that the trial court's allowance in evidence of Farley's prior re-corded testimony violated the rule against hearsay and abridged his Sixth Amendment right to confrontation. He bases his argu-ments on the fact that appellant was not a party to the prior proceeding against de-fendants Myrick and Hawthorne, and he was therefore deprived of any opportunity to cross-examine the witness whose testi-mony was used against him.

### 2. *Preliminary Considerations*

In deciding this case we must explore the constitutional ramifications of denying one the right to face his accusers where the former testimony of an unavailable witness is introduced against the defendant for the purpose of establishing the truth of the matter asserted. The government con-tends that the presence of certain factors which by themselves are not guarantees of truthfulness are nevertheless sufficient safeguards for allowing the evidence as long as persons other than the defendant had the opportunity to cross-examine the witness extensively. On this record, we disagree.

The right of every criminal defendant to face his accusers has ancient roots.[1] *See Acts* 25:16 (King James) ("It is not the manner of the Romans to deliver any man to die, before that he which is accused have the accusers face to face, and have license to answer for himself.") As the framers no doubt recognized, testing the accuracy and credibility of witnesses presented against an accused is vital to the fact-find-ing process. Thus, without proper confron-tation at trial, the "integrity of the fact-finding process" is jeopardized. *Berger v. California*, 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969) (quoting *Link-letter v. Walker*, 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601 (1965)). The Confrontation Clause of the Sixth Amend-ment[2] is the embodiment of these princi-ples. These principles are best served by ensuring that accusations are made under oath, by a declarant whose demeanor and credibility can be assessed by the trier of fact, when the witness is subject to cross-examination. *See* FED.R.EVID. art. VIII ad-visory notes.

---

1. For an informative and well-documented dis-cussion of the historical foundations of each aspect of the Confrontation Clause, *see* Note, *Federal Rule of Evidence 801(d)(2)(e) and The Confrontation Clause: Closing the Window of Admissibility for Coconspirator Hearsay*, 53 FORD-HAM L.REV. 1291 (1985).

2. U.S. Const. Amend. VI, states in part, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."

The rule against hearsay also excludes statements not made under oath, in the presence of the trier of fact, and subject to cross-examination by the accused. There are a number of exceptions to this rule, which because of the presence of specific guarantees of reliability, allow certain accusations to be admitted without the benefit of cross-examination.[3] In most cases, however, the Confrontation Clause affords a criminal defendant greater protection than the hearsay rule was intended to offer. With respect to *not cross-examined* hearsay, the Confrontation Clause acts as a rule of exclusion. For example, even if the statement satisfies the particular exception under which it is sought to be admitted, the admission of the statement may violate the Confrontation Clause when the declarant is unavailable. *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970).

### 3. *Former Testimony Under The Rule Against Hearsay*

Both the common law in this jurisdiction and the Federal Rules of Evidence (Rule 804(b)(1)) preclude the use of former testimony against a criminal defendant under the hearsay rule where that defendant was not a party to the former proceeding and did not have the opportunity to cross-examine the testifying witness at any subsequent proceeding.

■ The common law requires that in order for former testimony to be admissible in the pertinent exception to the hearsay rule, the following four criteria must be met: (1) the direct testimony of the declarant is unavailable; (2) the former testimony was given under oath or affirmation in a legal proceeding; (3) the issues in the two proceedings were substantially the same; and (4) the party against whom testimony now is offered had the opportu-

nity to cross-examine the declarant at the former proceeding. *Henson v. United States*, 399 A.2d 16, 19 (D.C.), *cert. denied*, 444 U.S. 848, 100 S.Ct. 96, 62 L.Ed.2d 62 (1979) (quoting *Alston v. United States*, 383 A.2d 307, 315 (D.C.1978)).

This court has consistently held that "[a]n adequate opportunity to cross-examine exists if the parties and the issues in both proceedings are substantially the same." *Epstein v. United States*, 359 A.2d 274, 277 (D.C.1976).

■ The requirement that the parties and the issues be the same in both proceedings is a means of fulfilling the policy of securing an adequate opportunity of cross-examination by the party against whom such testimony is offered. *See* McCormick § 257 at 767 (3d ed. 1984). This court has only permitted the use of former testimony where some opportunity for cross-examination by the party against whom the testimony is now offered could be found, most recently in *Jones v. United States*, [*Jones I*], 441 A.2d 1004, 1006 (D.C.1982), and has in fact declined to allow such use where the opportunity existed but was found to be "inadequate." *Jones v. United States*, [*Jones I*], 483 A.2d 1149 (D.C.1984).[4]

The FEDERAL RULES OF EVIDENCE § 804(b)(1) draws a distinction between criminal and civil cases and allows the use of:

> [T]estimony given as a witness at another hearing of the same or different proceeding ... if the party against whom the testimony is now offered, *or, in a civil action or proceeding, a predecessor in interest*, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

*Id.* Under some conditions, substituted cross-examination is admissible in *civil*

---

**3.** Under the Federal Rules of Evidence, exceptions to the hearsay rules are not cast in positive terms of admissibility, but rather in terms recognizing that they may still fail to satisfy confrontation principles. FED.R.EVID. art. VIII advisory notes.

**4.** Although we have noted distinctions regarding defensive and offensive use of former testimony in assessing the adequacy of the opportunity to cross-examine, *see e.g., Jones II, supra,* 483 A.2d at 1156 n. 9, such distinctions have not entered into our consideration where a defendant was wholly deprived of cross-examining a witness whose testimony is offered against him.

*cases* under the federal rule.[5] In criminal cases, however, the party against whom the former testimony is now offered must have been a party to the former proceeding and there is no substitution.

■ There is no dispute that Farley's former testimony was under oath and that he was legally unavailable to testify at trial in this case. "Equally important, however, is the requirement that the party against whom the testimony is now offered must have had in the prior proceeding an adequate opportunity to cross-examine the declarant." *Epstein, supra,* 359 A.2d at 277.

In making its ruling, the trial court here concluded that Farley's testimony would be admissible on the grounds that the issues were substantially the same, counsel for the two codefendants at the prior proceeding had fully cross-examined the witness, and that appellant's interests were "similar enough" to those of the two other defendants as to make their cross-examination of Farley an effective substitute for appellant's own cross-examination. The trial court's mistake was in concluding that substitute cross-examination together with similarity of issues was sufficient to allow the introduction of Farley's prior testimony under the hearsay rule in a criminal case. The gravity of the error and its prejudicial effect on appellant's case may be determined after exploring the constitutional problems involved.

### 4. *Former Testimony and the Right to Confrontation*

The most recent pronouncement by the Supreme Court on the constitutionally improper denial of a defendant's opportunity to cross-examine the witnesses against him is *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), where the Court stated:

While some constitutional claims by their nature require a showing of prejudice with respect to the trial as a whole, *see e.g., Strickland v. Washington,* 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984) (ineffective assistance of counsel), the focus of the Confrontation Clause is on individual witnesses. Accordingly, the focus of the prejudice inquiry in determining whether the confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial. It would be a contradiction in terms to conclude that a defendant denied any opportunity to cross-examine the witnesses against him nonetheless had been afforded his right to "confront[ation]" because use of that right would not have affected the jury's verdict. We think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska,* 415 U.S. [308, 318 [94 S.Ct. 1105, 1111, 39 L.Ed.2d 347] (1974).]

*Id.* at 1436.

The Court concluded, however, that such Confrontation Clause errors are subject to a harmless error analysis, *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), *i.e.,* whether the Court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. *Van Arsdall, supra,* 106 S.Ct. at 1436.

The admissibility of Farley's testimony for use by the government against appellant is beset with the constitutional questions regarding the right of the accused to confront the witnesses against him in accordance with the Sixth Amendment.[6] True, it could broadly be said that the

---

**5.** Here, however, even if the rule as related to civil cases were to be applied, there is no "predecessor in interest" consideration present in this case.

**6.** The Supreme Court has recognized that the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots, but it has declined to equate the two. *Dutton v. Evans,* 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970). The Court has acknowledged that "authorities have agreed that present hearsay law keeps reliable evidence

former testimony here was a hearsay statement which should not have been admitted into evidence. Yet our principal focus is on the denial of cross-examination which amounts to a denial of appellant's constitutional right to confrontation.

"When a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause and the common law requires a showing of reliability and unavailability." *Jones I, supra,* 441 A.2d at 1006 (citations omitted). Unavailability is not at issue in this case.[7] Concededly, the trial court properly found unavailability here based on Farley's refusal to testify. We focus instead on the question of reliability. The Supreme Court has held:

> Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).

Where the *Roberts* "indicia of reliability" are present, *i.e.,* where hearsay evidence is admissible because it falls squarely within an exception, Confrontation Clause problems are avoided, *id.* at 66, 100 S.Ct. at 2539, and this court has neither expanded this rule nor defined other "guarantees of trustworthiness" that might otherwise render the evidence reliable in the absence of a "firmly rooted" hearsay exception.

The government contends that simply because Farley's statements were made under oath and there may have been "similar motives and interests" to impeach Farley on the part of Hawthorne and Myrick during their cross-examination, that certain "indicia of reliability" are present in satisfaction of the *Roberts* test.[8] However, these are merely two of four elements necessary to establish the former testimony exception, as discussed above. Equally important are the remaining two necessary elements: that the witness is unavailable and that the party against whom the testimony is now offered had the opportunity to cross-examine the declarant at the former proceeding. *See Henson, supra,* 399 A.2d at 16.

### 5. *Prejudicial Error Requires Reversal*

■ Having determined that the trial judge's rulings were in error, we must now determine if this error was harmless.

---

from the courtroom." *Id.* at 86 n. 17, 91 S.Ct. at 218 n. 17.

The Advisory Committee's notes to the Federal Rules of Evidence comment on the importance of this distinction:

> Under the earlier [U.S. Supreme Court] cases, the Confrontation Clause may have been little more than a constitutional embodiment of the hearsay rule ... But under the recent cases the impact of the clause clearly extends beyond the confines of the hearsay rule.

FED.R.EVID. art. VIII advisory notes (1985).

7. If it were to be found by a trial judge, however, that a witness' "unavailability" has resulted from obstruction of justice in this respect by a defendant then, to be sure, a different question arises. In that event, it may well be concluded by the trial judge that the defendant has thereby waived his constitutional right to confrontation of that witness. *See United States v. Carlson,* 547 F.2d 1346 (8th Cir.1976).

8. When arguing against the need for appellant's own cross-examination of Farley, the government incorrectly relies upon *United States v. Insana,* 423 F.2d 1165 (2d Cir.1970), which this court has commented on with approval in *United States v. Hsu,* 439 A.2d 469, 471 (D.C.1981).

That case is factually dissimilar in several respects. In *Insana,* the court upheld the use of a government witness' prior grand jury testimony after the witness feigned a lack of memory at trial. However, the court also stated:

> Insana's first contention upon appeal is predicated upon a claimed denial of his Sixth Amendment right to confront [the witness] against him.... We disagree. [The witness] took the stand [at Insana's trial] and was *at all times available for cross-examination.* We are far from convinced that such cross-examination would have been fruitless in view of his obvious desire to help Insana [by refusing to answer questions on the stand]. These facts are quite different from the factual pattern in [cases] where the defendant had no opportunity to cross-examine the author of the extrajudicial inculpatory statement *because he was legally unavailable.*

*Insana, supra,* 423 F.2d at 1168 (citations omitted) (emphasis added).

Here, unlike the witness in *Insana,* Farley was legally unavailable and appellant had no opportunity for cross-examination. Furthermore, in the *Hsu* case, the defendant also had the opportunity at the prior proceeding to cross-examine the witness whose former testimony was used against him. 439 A.2d at 472.

The Supreme Court in *Chapman, supra,* rejected the argument that all federal constitutional errors, regardless of their nature or the circumstances of the case, require reversal of a judgment of conviction. The Court reasoned that in the context of a particular case, certain constitutional errors may have been "harmless" in terms of their effect on the fact-finding process at trial. Since *Chapman,* the Court has repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. *Van Arsdall, supra,* 106 S.Ct. at 1436. *See also United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

The constitutional complications manifest in the trial court's error here were not sufficiently mitigated by its order to redact any mention of appellant's name from those portions of the former testimony read to the jury. Under the Sixth Amendment, evidence offered against appellant must be reliable, and the trial court could not cure problems related to reliability by editing the content or altering the form of this testimony, which can only be described as hearsay that does not fall within any established exception. The hearsay evidence must be weighed against all other evidence on review, however, in order to determine its effect on the jury's finding that the defendant was guilty beyond a reasonable doubt. *Van Arsdall, supra,* 106 S.Ct. at 1436.

The fact that the government relied heavily on Farley's earlier testimony to establish the underlying felony in this case is not in dispute. In her closing argument, the prosecutor explained to the jury the crucial importance of Farley's prior testimony:

How would you know whether there was an armed robbery in the alley when the only people in the alley were the four original defendants, Farley, Myrick, Hawthorne and Mr. Thomas? *And so you heard from Mr. Farley, who basically told you he didn't remember anything and so you heard portions of his testimony from the last trial.... The purpose was for you to see from that testimony what happened to [William Reed] in the alley....* How would you know that if you didn't hear from someone in the alley? I submit to you, ladies and gentlemen, now you know, from whatever the source, exactly what happened to Big Mike in that alley ... that he was robbed at gunpoint, that there was an armed robbery, and he was murdered in the course of that robbery.

(Emphasis added.)

The only other evidence presented by the government was testimony from two witnesses, Edward Judge and Katherine Pounds, who were in the area at the time of the shooting. Although they heard gunfire, they were not eyewitnesses to the crime. They testified that they saw appellant flee from the scene at the time of the shooting, that William Reed had drugs and money on his person prior to his murder, and that Thomas, Myrick and Farley all had engaged in drug dealing in the same vicinity as Reed. Pounds also testified that William Reed had drugs and money on his person apparently some fifteen or more minutes prior to his murder. They also gave testimony that the primary motive for the shooting may have been a price war among competing sellers of preludin in the 11th and O Streets area.

The government's argument that "the portions of Farley's testimony admitted into evidence in no way connected appellant with the crime" is totally without merit. Appellee's quote *Chapman v. California, supra,* 386 U.S. at 23, 87 S.Ct. at 827, stating that "there is 'no reasonable possibility that the evidence complained of might have contributed to the conviction.'" This is obviously not a valid assessment of the evidence as presented to the jury in this case. Given that appellant was acquitted of first degree murder, the existence of the robbery, if established by Farley's testimony, was crucial. According to the prosecutor at the trial, Farley's former testimony

is the only eyewitness account of the events in the alley, and the only direct evidence offered against appellant which establishes the underlying felony of the felony murder charge. The government is scarcely in a position to deny the accuracy of the prosecutor's statement to the jury.

The mere absence of any direct reference to appellant's name or presence, had this been the actual case, would not in and of itself neutralize the negative inferences to be drawn from the government's persistent questioning of Farley on the stand during appellant's trial despite his reluctance to answer coherently, and the read-back to the jury of his graphic, descriptive and detailed account of the bloody events in the alley over persistent objections by defense counsel.

The truth of the matter is that two portions of prior testimony on cross-examination read to the jury did refer to appellant by name. The first was as follows:

Q. So anyone who testified that Melvin [Thomas] walked with Big Mike into the alley of 10th Street wouldn't be right, is that what you are telling us?
A. Yeah.

The second reference was substantially the same as the first, as both questions asked for essentially the same information:

Q. If I told you that another eyewitness stated that Melvin led Big Mike into the alley over here, would that witness have been mistaken?
A. Yes.
Q. Or lying?
A. Mistaken.
Q. Mistaken?
A. Yes.

In addition, both defense counsel and government's counsel referred to those portions of Farley's prior testimony not read to the jury in their closing arguments:

(Counsel for defense): And one thing the government says, that they have put [Farley] in and his testimony into evidence to establish the robbery occurred.

Where is that testimony, that prior testimony, is there anything that implicates Mr. Thomas in the participation of that event? Did you hear anything?

And then during the government's closing:

(Prosecutor): Oh, [defense counsel] says to you, Mr. Farley doesn't implicate my client. He does not say in his testimony about the robbery and the murder that my client was in the alley. When we started reading Mr. Farley's testimony you learned that we read, and you saw us, portions—
(Defense Counsel): Objection.
(Prosecutor):—of Mr. Farley's testimony
(Defense Counsel): Objection—
(The Court): Excuse me. Step forward.

A bench conference ensued where the court admonished the prosecutor and cautioned her not to refer again to those portions of the testimony not read to the jury. The court did not instruct the jury to disregard the prosecutor's statements, however.

The negative inference to be drawn by the jury from Farley's prior testimony is clear. The armed robbery occurred and Farley said that he saw it happen. It resulted in the death of the victim. Farley said that he watched as the assailants killed him. Appellant's friends and drug-business associates were convicted of the crime based on this testimony. Judge and Pounds saw appellant enter the alley, and then they saw him run from it after shots were fired. Pounds knew the victim was carrying cash and drugs at some uncertain time before he entered the alley, and the police found none on the body after the shooting. Excise Farley's prior testimony and not very much remains. Yet, appellant had no opportunity to challenge Farley's statements, nor to question him regarding what he knew or saw of appellant's own role, if any, in the events of the crime as they developed the day of the shooting, nor for that matter, what role Farley himself played in that event.[9]

9. In spite of all of this, the government urges that "In this case, the portions of Farley's testimony read to the jury were not even adverse, let alone devastating, to appellant." It cannot be said here that Farley's testimony did not incriminate appellant Thomas. By being denied his right to cross-examine Farley, Thomas was denied "his right to counter the increased proba-

bility, this strengthened inference" that he was intimately involved in the armed robbery and murder of William Michael Reed. *James v. United States,* 514 A.2d 793 (D.C.1986), *citing with approval, Eder v. People,* 179 Colo. 122, 498 P.2d 945, 946–47 (1972) (negative inferences drawn from defendant's witness' testimony may incriminate codefendant and require opportuni-

While the government contends that in this case, the testimony of the two other witnesses—Judge and Pounds—provided ample evidence upon which "reasonable persons could find guilt beyond a reasonable doubt," this is not a relevant test here. The denial of appellant's right to confrontation constituted prejudicial error because in light of all the evidence presented to the jury, we are unable to conclude that the constitutional error was harmless beyond a reasonable doubt. *Chapman v. California, supra.*

■ Ordinarily, we would reverse and remand for a new trial. Thomas also contends, however, that because the remaining evidence, excluding the improperly admitted prior testimony of Farley, is insufficient to sustain his convictions, we should reverse with instructions to enter a judgment of acquittal. *See Burks v. United States,* 437 U.S. 1 (1978); *Graves v. United States,* 515 A.2d 1136, 1146 (D.C.1986); *In re M.L.H.,* 399 A.2d 556, 558–59 (D.C.1979). Where the government has presented insufficient evidence to convict, the Double Jeopardy Clause bars retrial. *Burks, supra.* In this case, excluding Farley's inadmissible prior recorded testimony, the government clearly presented insufficient evidence to sustain a conviction. We reverse with instructions to enter a judgment of acquittal.[10] *Graves v. United States, supra,* 515 A.2d at 1146; *In re M.L.H., supra,* 399 A.2d at 558–59.

*So ordered.*

Before: Pryor, Chief Judge; Mack, Newman, Ferren, Belson, *Terry, Rogers, and Steadman, Associate Judges.

PER CURIAM.

ORDER

On consideration of appellee's petition for rehearing en banc, and the oppositions thereto; and it appearing that the majority of the judges of this court has voted to grant the petition for rehearing en banc, it is

ORDERED that appellee's petition for rehearing en banc is granted and that the opinion and judgment of August 10, 1987, are hereby vacated. It is

FURTHER ORDERED that the Clerk shall schedule this matter for argument before the court sitting en banc as soon as the business of the court permits. Counsel are hereby directed to provide ten copies of the briefs heretofore filed to the Clerk on or before November 9, 1987.

ty to cross-examine witness under Sixth Amendment). *See United States v. Mercks,* 304 F.2d 771, 772 (4th Cir.1962) (if a party testifies in his own behalf and incriminates his codefendant, the latter should be extended the right of cross-examination under the Sixth Amendment).

One cannot really say that there was not at least a likelihood that the jury drew a negative inference from Farley's prior testimony directly linking appellant with the crime. This is borne out by the conviction of Thomas.

10. In *Graves* and *In re M.L.H.,* we held that where illegal evidence is excised and insufficient evidence remains to convict we should reverse with instructions to enter a judgment of acquittal, barring retrial. Of those jurisdictions which have considered the issue, a few follow this rule under similar circumstances. *See, e.g., State v. Bannister,* 60 Haw. 658, 594 P.2d 133 (Haw.1979); *State v. Alexander,* 281 N.W.2d 349 (Minn.1979); *State v. Abel,* 600 P.2d 994 (Utah 1979). *But cf., State v. Lamorie,* 610 P.2d 342, 347–49 (Stewart, J., concurring) (Utah 1980).

It should be noted that although the Supreme Court has explicitly left this precise question open, *see Greene v. Massey,* 437 U.S. 19, 27 n. 9, 98 S.Ct. 2151, 2155 n. 9, 57 L.Ed.2d 15 (1978), the circuit courts of appeal that have considered it have held that when evaluating a double jeopardy challenge to a retrial order after reversal of a conviction for trial error *"all* the evidence presented at the initial trial—even that later found to be unconstitutionally admitted must be counted." *United States v. Porter,* 807 F.2d 21, 24 n. 2 (1st Cir.1986) (emphasis in original), *cert. denied,* —— U.S. ——, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987); *see e.g., United States v. Tranowski,* 702 F.2d 668, 671 (7th Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3586, 82 L.Ed.2d 884 (1984). *Linam v. Griffin,* 685 F.2d 369, 373–74 (10th Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); *United States v. Sarmiento-Perez,* 667 F.2d 1239 (5th Cir.), *cert. denied,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 75 (1982); *United States v. Harmon,* 632 F.2d 812, 814 (9th Cir.1980) (per curiam); *United States v. Mandel,* 591 F.2d 1347, 1372–74 (4th Cir.), *rev'd on other grounds,* 602 F.2d 653 (4th Cir.1979) (en banc), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). The majority of state courts that have addressed this issue have taken the same position. *See, e.g., Commonwealth v. Taylor,* 383 Mass. 272, 284, 418 N.E.2d 1226, 1233 n. 16 (1981); *State v. Van Isler,* 168 W.Va. 185, 190, 283 S.E.2d 836, 839 n. 3 (1981).

* Associate Judge Terry has recused himself from this case.

Associate Judge Mack voted to deny rehearing en banc.