**Audley SKYERS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CF–1168.**

District of Columbia Court of Appeals.

Argued Dec. 21, 1992.
Decided Jan. 26, 1993.

R. Kenneth Mundy, Washington, DC, for appellant.

Stephen P. Anthony, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas C. Black, and

David Schertler, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before TERRY, STEADMAN and KING, Associate Judges.

KING, Associate Judge:

■■■■ Appellant was convicted of two counts of kidnaping[1] and associated offenses.[2] On appeal, he raises only one[3] claim that requires more than summary consideration: whether the admission at trial of the prior recorded testimony of a deceased witness at a bail hearing was a violation of the hearsay rule. We affirm.

Appellant and his co-defendant, Mannie Harris, kidnaped two women, Tyieast Gross and Katrina Drayton, two days before they were scheduled to testify at the murder trial of appellant's brother, Desmond Skyers. The two women were eyewitnesses to the killing. Four days before the abduction, the trial judge in the Desmond Skyers case issued an order directing appellant to stay away from both Drayton and Gross.

On September 9, 1989, Drayton was approached by appellant and a second man,

known as Mowet. Appellant told Drayton that if she did not go with them she would put her life, her son's life, and her family's lives in jeopardy. Drayton was then driven to a motel on New York Avenue where she was left with Harris, Mowet, and Harris' girlfriend, Erna Norris. Appellant returned in the evening with keys to a truck which was used to transport Harris, Norris, and Drayton to a motel in Frederick, Maryland. Harris told Drayton she was being taken away so she would not testify against appellant's brother.

The next day, September 10, appellant approached Gross and told her that she would harm herself and family if she testified against his brother. He asked her to leave town and offered her money, clothing, and drugs. Gross agreed to go with appellant to avoid endangering the lives of her family and herself. Appellant drove Gross to a motel on New York Avenue; Harris then came and took Gross to the same motel in Frederick where Drayton had been taken.

Harris, Norris, Drayton, and Gross stayed in the Frederick motel for approximately four days during which time they

1. In violation of D.C.Code § 22–2101 (1989 Repl.).

2. He was also convicted of two counts of obstruction of justice, in violation of D.C.Code § 22–722(a)(1) (1989 Repl.), and one count of criminal contempt of court, in violation of D.C.Code § 11–944 (1989 Repl.).

3. Appellant's three other arguments merit only brief discussion. Prior to trial, appellant moved to sever his case from his co-defendant because of a tape recorded statement the co-defendant gave to the·police. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Appellant claims the trial court abused it discretion in denying his motion; however, we need not reach that question because the government did not introduce the co-defendant's statement at trial.

Appellant also argues that the trial court improperly allowed co-defendant's counsel to introduce "other crimes" evidence in the form of impeachment of one of the kidnap victims with her grand jury testimony in which she testified that during the course of the kidnaping, appellant supplied her with drugs. Appellant's argument fails because the government could have presented this evidence in its case-in-chief to explain the circumstances immediately surrounding a charged offense, *Toliver v. United States,* 468 A.2d 958, 960–61 (D.C.1983), or as evidence to prove one or more elements of a charged offense, that is, that use of the drugs by the victim enabled her kidnapers to hold her against her will. *See, e.g., Thomas v. United States,* 588 A.2d 272, 274 (D.C.1991). Moreover, the grand jury testimony was used only to impeach the witness, and the jury was instructed to consider the testimony only for that limited purpose.

Finally, appellant contends that the trial judge erred by denying his request for a jury instruction on perjurer's testimony after a witness admitted that she had lied in a prior proceeding while under oath. *See* Criminal Jury Instructions for the District of Columbia, No. 2.24 (3d ed. 1978). We recently held that it is not reversible error for a trial judge to refuse to give the requested instruction when a general credibility instruction is given, as it was in this case. *See Mitchell v. United States,* 609 A.2d 1099, 1111 (D.C.1992) (no error when circumstances surrounding perjury were fully presented to jury and judge gave standard credibility instruction). While there may be cases where the perjurer's testimony instruction would be necessary, we are satisfied that the trial judge did not err in not giving the instruction in this case.

slept, ate, watched television, and smoked crack. After stops in Baltimore and Virginia, the group stayed several days in Rocky Mount, North Carolina. During the entire trip, either Harris or Norris remained with Drayton and Gross. Finally, on September 19, 1989, Harris and Norris, for the first time, left Drayton and Gross alone in the motel. Drayton called her uncle and asked him to call Detective Alfonzo Terrell of the Metropolitan Police Department. The Rocky Mount police were notified, and after Gross and Drayton told the officers that they had been abducted, the officers transported them to the police station. Although Gross and Drayton were flown back to the District, they were unable to testify at the Desmond Skyers murder trial because it had concluded the day the women were rescued. Desmond Skyers was found not guilty of the charges against him.

Appellant, who was incarcerated in another case, was then charged in this case with kidnaping. At a preliminary hearing on October 12, 1989, the appellant and his co-defendant were ordered held without bond. Both defendants subsequently filed motions seeking a modification of their bail status.

On November 3, 1989, a lengthy bail hearing was conducted. The government sought to prevent appellant's release by showing that he had a total disregard for law and order and posed a danger to the community. During the hearing Drayton was called as a witness by the government. After hearing testimony and argument, the trial court revoked its previous order holding appellant without bond. A surety bond of $5,000 was then set; appellant subsequently met the bond and was released.

Fifteen months after the bail hearing, in an unrelated incident, Drayton was shot and killed. Prior to trial, the government moved to admit the bail hearing testimony of Drayton under the prior recorded testimony hearsay exception. The trial judge, after careful consideration of the similarity of the issues in the two proceedings and trial counsel's opportunity to cross-examine Drayton at the bail hearing, ruled that the prior recorded testimony would be admissible at trial. At a subsequent hearing the parties exhaustively reviewed the transcript to determine what portions of Drayton's testimony would be redacted before it would be presented to the jury. The audio tape of Drayton's testimony was then redacted, and that version was played for the jury after opening statements. Prior to hearing the tape, the judge cautioned the jury, in the following way, about Drayton's testimony:

> [T]he testimony you are about to hear was offered at an earlier proceeding in this case. That proceeding was not a trial. While as you hear, we'll hear Miss Drayton testified at the earlier proceedings about matters related to the trial, the lawyers did not know that her testimony would be used as a substitute for trial testimony and they were not necessarily asking the kinds of questions that would have been asked at an actual trial.
>
> In your consideration of [this tape], you may take these matters into account. In sum, you should give Miss Drayton's tape recorded testimony ... such weight as in your judgment it is fairly entitled to receive.

Appellant contends that the trial court's admission of Drayton's prior recorded testimony denied him his right to a fair trial because it violated the rule against hearsay and abridged his Sixth Amendment right to confront his accuser. He bases his argument on two points: 1) there were different issues before the court in the two proceedings; and 2) his counsel was not accorded an adequate opportunity to cross-examine Drayton at the prior proceeding.

■ It is well-settled in this jurisdiction that in order for prior recorded testimony to be admissible as a hearsay exception, four prerequisites must be satisfied:

> (1) the direct testimony of the declarant is unavailable; (2) the former testimony was given under oath or affirmation in a legal proceeding; (3) the issues in the two proceedings were substantially the same; and (4) the party against whom the testimony now is offered had the

opportunity to cross-examine the declarant at the former proceeding. *Thomas v. United States,* 530 A.2d 217, 221 (D.C.1987) (citations omitted), modified on other grounds, 557 A.2d 599 (D.C.1989) (en banc). *See also California v. Green,* 399 U.S. 149, 165–66, 90 S.Ct. 1930, 1938–39, 26 L.Ed.2d 489 (1970) (allowing the admission at trial of preliminary hearing testimony of an unavailable witness). Appellant does not challenge the first two factors, but contends that Drayton's testimony meets neither of the remaining two requirements.

Before we turn to an analysis of the trial court's decision on the admissibility of the prior recorded testimony, we note some conflict in our decisions concerning the applicable standard of review. In *Jones v. United States,* 441 A.2d 1004, 1007 (D.C. 1982), we reviewed the trial court's determination that a witness was unavailable, and held that there was "no abuse of discretion on the part of the trial judge in admitting [the] prior trial testimony." That same year, considering the same admissibility factor, i.e., witness availability, we held that a trial court's determination for admissibility of prior recorded testimony will only be reversed if "such a factual finding ... is plainly wrong or without evidence to support it." *Ready v. United States,* 445 A.2d 982, 990 (D.C.1982) (quoting D.C.Code § 17–305) (internal quotations omitted). Finally, we have also held that once it is determined that the prerequisites to admissibility of prior recorded testimony evidence have been met, the trial judge must decide whether the probative value of the evidence outweighs any prejudicial effect. *See Johns v. United States,* 434 A.2d 463, 473 (D.C.1981) (holding that trial court has substantial discretion in determining whether prior recorded testimony is competent, relevant, and that probative value outweighs any prejudicial effect).

■ We need not resolve this conflict, however, because we are satisfied, after examining the record, that applying either the abuse of discretion standard or the "plainly wrong or without evidence to support it" standard, the trial court could properly find that Drayton's testimony fit squarely within each prong of the prior recorded testimony hearsay exception. *See Johnson v. United States,* 398 A.2d 354, 362 (D.C.1979) (judgment should reflect that discretion was exercised with regard to what is right and equitable under the circumstances and the law, not willfully or arbitrarily).

The testimony of Drayton at the bail hearing is admissible as an exception to the hearsay rule only if the issues at the bail hearing were substantially the same as those at trial, and trial counsel had a sufficient opportunity to test that testimony by cross-examination. The latter requirement, however, is ordinarily satisfied by showing a similarity of parties and issues. *See Epstein v. United States,* 359 A.2d 274, 277 (D.C.1976) ("An adequate opportunity to cross-examine exists if the parties and the issues in both proceedings are substantially the same."). Since there is no dispute in this case that the parties are the same, the cross-examination issue is resolved if the issues were substantially the same. Appellant maintains that both the purpose of the bail hearing and the issue focused on by the parties at that hearing were different from those present at trial. In sum, appellant claims that the only issue to be resolved at the bail hearing was whether he was a danger to the community, whereas at trial the issue was whether the he was guilty of the offenses charged.

In determining whether the issues are substantially the same, we must look at the record of the bail hearing to determine whether the parties did in fact explore the issue ultimately to be resolved at trial—appellant's asserted guilt of the kidnaping charges. In *Alston v. United States,* 383 A.2d 307 (D.C.1978), a criminal defendant sought to introduce the testimony of his co-defendant, Burton. Before trial Burton pleaded guilty. In the proceeding in which the guilty plea was received by the court, government counsel questioned Burton under oath about the offense. During this questioning, Burton essentially exonerated Alston and took sole responsibility for the incident. At Alston's trial, Burton asserted

his Fifth Amendment privilege and refused to testify when called as a witness by Alston. This court, in reversing the trial court ruling denying Alston the opportunity to introduce Burton's testimony, held that when the government conducts "a searching inquiry [in the prior proceeding] into the extent of appellant's participation in the offense—the precise issue to be determined at appellant's trial[,]" prior recorded testimony may be admitted in a subsequent trial when the witness is unavailable. *Id.* at 315. *See also Johns, supra,* 434 A.2d at 473 (allowing prior recorded testimony of two witnesses at grand jury proceeding investigating a murder charge against Tyrone Simmons to be admitted at a trial five years later on behalf of a defendant charged with killing Simmons in order to establish Simmons' prior violent acts in support of defendant's claim of self-defense).

At the bail hearing, both the government and the defendants were permitted to question Drayton at length about the appellant's involvement in the kidnaping. On direct examination Drayton not only identified appellant as one of those responsible in her kidnaping, but also gave an account of her ten-day ordeal. During a lengthy cross-examination, both appellant's counsel and co-defendant's counsel focused on the lack of coercion or physical threats by appellants and whether Drayton accompanied her alleged abductors voluntarily. For example, she was questioned about whether she ever attempted to leave and the lack of any effort on her part to escape. Her continual drug use with the kidnapers during the trip was also elicited. Defense counsel was allowed to impeach Drayton's credibility by showing that she had been using crack just before appellant initially approached her, that appellant had supplied her with drugs on previous occasions, and by implying that Drayton was interested in obtaining drugs from Skyers. Counsel also pointed out inconsistencies and inaccuracies in Drayton's testimony and introduced a photograph, taken during the trip, showing the two women in North Carolina smiling and suggested that Drayton was actually enjoying herself. Most important, the rec-

ord shows that appellant was able to explore, without interference, Drayton's assertion that appellant had threatened her life if she did not comply with his command. The trial court in admitting her testimony recognized the broad nature of the bail hearing:

> In this case, [cross-examination was] essentially unlimited. The only thing you're complaining about is that you had a different focus. But that is belied by the nature of the cross-examination that was undertaken.... Maybe you were doing it to get discovery. Maybe you were doing it for whatever purpose you want. But there was clearly no limit put on what you could question her. And you took full advantage of that. She was questioned at great length.

> \* \* \* \* \* \*

> If the judge had said to you, you can't cross-examine her, you can only ask a few discovery questions, I think I'd agree with you. But you were given carte blanche to cross-examine her any way you chose.

The essence of kidnaping, the offense to which Drayton's testimony was directed, is whether the perpetrator was guilty of "seizing, confining, inveigling, enticing, decoying, kidnaping, abducting, concealing, or carrying away any individual by any means whatsoever, and holding or detaining, or with the intent to hold or detain, such individual for ransom or reward or otherwise...." D.C.Code § 22–2101 (1989 Repl.). Drayton's testimony at the bail hearing goes directly to the heart of an issue at trial—whether appellant's conduct constituted a kidnaping. The cross-examination essentially focused on whether the crimes charged did in fact occur. The trial judge noted this when he remarked, "The issue here is, did this guy kidnap her. That was the issue in the [bail] hearing."

In addition, appellant's defense at trial was that he was neither present during any part of the kidnaping, nor involved in any phase of the offense. During the bail hearing, however, trial counsel was afforded ample opportunity to challenge Drayton's

assertion that appellant was actively involved. In short, contrary to appellant's contention, the bail hearing went beyond a consideration of his dangerousness. As the trial judge observed, "[y]our defense at trial is going to be the kinds of things that you questioned her about [at the bail hearing].... And I'm not sure what you would have done beyond that."

We are satisfied, therefore, based on this record, that there was more than ample basis for the trial judge's conclusion that the issues in the two proceedings were substantially the same, and that there was more than adequate opportunity to cross-examine Drayton. *See Alston v. United States, supra,* 383 A.2d at 307; *Johns v. United States, supra* 434 A.2d at 473. Accordingly, we conclude that the trial judge neither abused discretion nor was plainly wrong in admitting Drayton's testimony under the prior recorded testimony exception to the hearsay rule.

Finally, appellant's argument that admitting Drayton's prior recorded testimony violated his confrontation right is equally unpersuasive. Since testimony admitted under the prior recorded testimony exception contains the requisite "indicia of reliability," no confrontation clause problem is presented. *See Ohio v. Roberts,* 448 U.S. 56, 66–69, 100 S.Ct. 2531, 2539–40, 65 L.Ed.2d 597 (1980). Consequently, we find that the trial court, by admitting the testimony of Drayton, did not violate appellant's constitutional right to confrontation.

Accordingly, the judgment is affirmed.

*So ordered.*