**Michael A. FEASTER, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 90–CF–1572.

District of Columbia Court of Appeals.

Argued Feb. 18, 1993.
Decided Sept. 20, 1993.
As Amended on Denial of Reconsideration
Nov. 16, 1993.

Richard A. Ripley, with whom Diane B. Heller, Washington, DC, was on the brief, for appellant.

Barbara A. Grewe, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before ROGERS, Chief Judge, and FERREN and KING, Associate Judges.

ROGERS, Chief Judge:

Appellant Michael A. Feaster appeals from his convictions by a jury of sexual offenses on the grounds that his Sixth Amendment right to present a defense was violated when the trial judge excluded from the defense case a transcript of the grand jury testimony of Oscar Mitchell. We hold that the judge will have abused his discretion in excluding the grand jury transcript unless accompanied by a finding that the witness was not shown to be unavailable to testify at trial. Accordingly, we remand the record to the trial court to make a finding regarding unavailability. Appellant's other contention, that the trial judge

erred by denying his motion to sever the counts relating to two of the complainants, is controlled by *Johnson v. United States*, 610 A.2d 729 (D.C.1992), *petition for reh'g en banc denied*, which upheld the admission of prior sexual conduct under the "unusual sexual preference" *Drew*[1] exception.

## I.

The complainants were seven young boys from troubled homes whom appellant took into his home and held out as his "godsons."[2] Four of the complainants were under the age of fourteen at the time of the incidents, which occurred between the summer of 1987 and early 1989. The complainants maintained that when they began staying at appellant's home, he had treated them "nice," made sure that they went to school and did their homework, and bought clothes for them. However, this living situation ended on Saturday, February 25, 1989, when one of the boys, John, ran away from appellant's apartment to his grandmother's home. Crying and upset, he told his grandmother that appellant had sexually assaulted him. The following Monday, John was examined by a doctor. As a result of a police investigation, appellant was charged with forty-one counts of sexually assaulting the boys who lived at, or regularly visited, his home.[3]

At trial, the boys related a similar account of the events which allegedly took place in appellant's home. The testimony of John, who was twelve at the time of the incidents, is both illustrative and possibly critical in some respects. John testified that he had lived in appellant's two-bedroom home for six months. According to

---

**1.** *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

**2.** The trial occurred in mid-June 1990, when the seven complainants were (1) John, age fourteen; (2) his brother Harald, age thirteen; (3) Derrick, age twelve; (4) William, age eighteen; (5) Alex, age eleven; (6) Henry, age seventeen; and (7) Shawn, age nineteen. The charges involving Henry and Shawn were dismissed during the course of the trial.

Two of the boys, John and Harald, were from single-heads-of-households and lived with appellant because their own mother had drug prob-

lems. Appellant's practice in this type of situation was to secure documentation from the guardian affording him temporary custody and then move them into his home at 1001 K Street, N.E. Derrick testified that he lived in appellant's home for six years. William and Alex testified that, although they had not lived with appellant, they had been frequent visitors. Milton Cheeks, a defense witness, testified that John and Harald's and Oscar Mitchell's mothers had problems as well.

**3.** *See* D.C.Code §§ 22–3502, –3501(a) and (b), –502 and –722 (Repl.1989).

John, appellant stayed in the front bedroom, while he (John) and his brother Harald (age eleven), Derrick (age ten), and Oscar Mitchell (age nineteen), stayed in the rear bedroom.[4] On November 23, 1988, a date which John claimed to remember because it fell between his birthday and Thanksgiving, John was watching television in the living room. Around 10:30 p.m. appellant, dressed in his underwear, told him to come into his room. John testified that he went into appellant's room, and appellant closed the door, laid on the bed, and began rubbing John's buttocks. John claimed that appellant told him to lie on his side on the bed, kept touching his buttocks, and sodomized him. John and William (age sixteen) described several occasions on which appellant, in a similar manner, sodomized them.[5]

In addition, the boys described in strikingly similar detail incidents in which appellant asked them to "hit the nipple," directing them to suck his chest nipples while he masturbated and ejaculated. John, Harald, and Derrick explained that they had not told anyone about what appellant was doing because they were afraid of appellant and ashamed. Alex (age nine) admitted that at first he had denied to the police and the prosecutor that the acts occurred because he was frightened. William testified that appellant had given him money in exchange for being his lover, and that appellant had told William that if he was ever caught, he (appellant) would take all of the boys down with him.

However, three of the boys—John, Harald, and William—also testified that Oscar

Mitchell (age nineteen) had been aware of, and in some instances even observed, the sexual misconduct that occurred. John testified that when appellant sodomized him in December 1988, Oscar Mitchell was in the bed with them.[6] Harald testified that at one time, although he could not remember when, Oscar Mitchell walked into the room as appellant was sexually assaulting him. A third boy, William, testified that Oscar Mitchell "knew what was going on," having walked into the room and observed things; William recalled an incident in the summer of 1987 when Oscar Mitchell had been in the bedroom when appellant called William and asked him if he wanted to "make love." According to William, Oscar Mitchell left the bedroom after hearing this statement.

At the close of government's case, defense counsel sought permission to introduce the transcript of Oscar Mitchell's testimony before the grand jury in lieu of his live testimony.[7] Counsel proffered that Oscar Mitchell was unavailable to testify at trial:

> At this time, Your Honor, the defense would proffer to the Court that over the last three months the defense has taken extensive steps to determine the location of Mr. Oscar Mitchell. I've personally been out looking for him, I have had relatives of the defendant out trying to find him. I've had several investigators trying to find Mr. Mitchell. We have been unable to do so. We have used every bit of our effort and good faith to

---

4. Oscar Mitchell was identified by the government to defense counsel as one of four potential witnesses under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

5. On cross-examination, John admitted that when he ran away from appellant's home on February 25, 1989, he had gotten into trouble with a girl at school and that as a result appellant was angry with him. Defense counsel also impeached John with other inconsistencies between his trial and grand jury testimony, and counsel brought out that the prosecutor had carefully rehearsed John's testimony with him before he testified at trial and before the grand jury.

6. On cross-examination, John claimed that Oscar Mitchell was awake but did nothing to stop appellant. Instead, according to John, Oscar Mitchell told appellant to "go ahead with that," which is slang for "stop."

7. At a pretrial status conference on April 23, 1990, the defense sought the release of grand jury testimony under Super.Ct.Crim.R. 6, and the prosecutor agreed to disclose the substance of the testimony. The judge stated that the defense would get the grand jury testimony if the witness testified. Defense counsel has never seen a transcript of Oscar Mitchell's grand jury testimony.

find Mr. Mitchell, to present him as witness at this time.

Defense counsel requested that the trial judge direct the prosecutor to disclose the transcript and, waiving appellant's Confrontation Clause rights, counsel sought to have the transcript introduced under the prior recorded testimony exception to the hearsay rule as the first defense witness. Defense counsel stated, "it is clear that this witness is unavailable," and again offered to present testimony of an investigator regarding the witness' unavailability. In response to the trial judge's question, the prosecutor stated that the government did not know where Oscar Mitchell was. When defense counsel asserted that the defense "ha[s] done everything we can to find him," the trial judge responded, "All right," and asked the prosecutor for his "response to the defense request that the grand jury testimony be submitted as evidence in light of the witness' unavailability." The prosecutor responded, "I've never heard of such a thing in a criminal trial, and I would strongly oppose it." Following a recess, the prosecutor repeated his opposition to introduction of the grand jury transcript on the basis that the case had been on hold for six weeks and that defense counsel had never voiced any concerns about locating Oscar Mitchell. The prosecutor also argued that the defense had not made a sufficient showing of unavailability, observing that defense counsel had not sought the assistance of the government or the court in finding Oscar Mitchell.

Upon reviewing the grand jury transcript, and hearing from defense counsel on the relevance of the grand jury testimony, the trial judge denied the defense request to have Oscar Mitchell's grand jury testimony admitted in the defense case.[8] The judge stated:

> The thrust of what Mr. Mitchell says in this transcript is he doesn't know any— he was hardly home. He didn't see anything, and he doesn't know anything. And when the inquiry was made that resulted in that testimony, it is clear from this transcript that the prosecutor did not assume an adversarial, inquiring, searching, and explicative approach in trying to ascertain what lay behind the superficial responses and attitude of the witness.
>
> Accordingly, I find that that testimony would not supply the jury with an opportunity to understand and scrutinize the testimony of Mr. Mitchell, and that the grand jury testimony will, therefore, not be available for evidentiary purposes at this hearing.

The defense then presented its case, including two witnesses who stated that they had never seen appellant engage in sexual acts with the boys in the house and one witness who offered a possible motive for John's instigation of the allegations.[9] The jury

---

**8.** When the trial judge had asked to see the grand jury transcript, the prosecutor briefly summarized its contents:

> It's a lengthy transcript, Your Honor, as Your Honor sees, mainly due to the witness's attitude in the grand jury. The substance of his testimony is that he was not at home during any of the incidents at issue in this case. He never saw any sexual acts, he never participated in any sex with anybody in the house, nor did he see any sex acts at the house.

**9.** The defense called four witnesses. Milton Cheeks, who had known appellant for five years and had lived in appellant's home until August 1988, testified that although he and appellant had a sexual relationship, he had never seen appellant participate in sexual acts with the boys who lived at his home. He also testified that while Oscar Mitchell sometimes slept in the same room with appellant, Oscar Mitchell had his own bed. Mr. Cheeks also described the fold-away beds that were used by some of the boys. According to Cheeks, when appellant had the boys in his room, he did not close the door.

Appellant's mother testified about a family reunion in July 1987 in North Carolina to which appellant brought some of the members of his household (Milton Cheeks and Derrick).

Rafael Thomas (age thirty-three) testified that he had known appellant for twenty to thirty years and had at one time lived in an apartment in the same building. He had also lived in appellant's apartment before then, but he denied that they had ever been lovers. Mr. Thomas described how appellant had cared for his "adopted" sons, and he explained that appellant's reference to "lotion up" was not a precursor to sexual activity but simply an instruction to the boys to put lotion on their bodies after bathing. He testified that he had never seen appellant have sex with anyone in his home.

found appellant guilty of six counts of sodomy, sixteen counts of indecent liberties, and four counts of enticing a minor child.[10]

## II.

Under the Sixth Amendment, a criminal defendant is guaranteed the right to offer testimony of witnesses in his favor. U.S. Const. amend. VI. Appellant contends that his right was violated when the trial judge excluded the transcript of Oscar Mitchell's grand jury testimony, and that his convictions must, therefore, be reversed. He maintains that Oscar Mitchell's testimony was critical because three of the complainants placed him in the same room during some of the alleged assaults, thus making him the only adult eyewitness, and the only one (aside from appellant) in a position to contradict the boys' version of what had happened. Appellant asserts that the transcript was admissible under the prior recorded testimony exception to the hearsay rule because defense counsel made a sufficient showing of Oscar Mitchell's unavailability and the government had a full and fair opportunity to cross-examine him at the grand jury.

■ In *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the Supreme Court stated that "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Id.* at 294, 93 S.Ct. at 1045. Accordingly, "the right[ ] ... to call witnesses in one's own behalf ha[s] long been recognized as essential to due process." *Id.* At the same time, the Court explained:

> Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other cir-

cumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury.

*Id.* at 298, 93 S.Ct. at 1047 (citing *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970)). Numerous exceptions to the hearsay rule have developed over the years, and one such exception is that for prior recorded testimony. This court has concluded that in order for hearsay evidence to be admissible under the prior recorded testimony exception, the proponent must establish that:

> (1) the direct testimony of the declarant is unavailable; (2) the former testimony was given under oath or affirmation in a legal proceeding; (3) the issues in the two proceedings were substantially the same; and (4) the party against whom the testimony is now offered had the opportunity to cross-examine the declarant at the former proceeding.

*Skyers v. United States,* 619 A.2d 931, 933–34 (D.C.1993) (bail hearing transcript admissible under prior recorded testimony exception) (quoting *Thomas v. United States,* 530 A.2d 217, 221 (D.C.1987), modified on other grounds, 557 A.2d 599 (D.C. 1989) (en banc)); *see Johns v. United States,* 434 A.2d 463, 473 n. 16 (D.C.1981) (citing *Alston v. United States,* 383 A.2d 307, 315 (D.C.1978)). Once these four elements have been established, it remains within the trial judge's discretion to exclude the evidence if its probative value is outweighed by its prejudicial effect. *Skyers, supra,* 619 A.2d at 934 (citing *Johns, supra,* 434 A.2d at 473 (evidence must be competent, relevant, and its probative value must not be outweighed by countervailing circumstances such as prejudice,

Appellant's ten-year-old nephew, Derrick B., testified that the other Derrick had told him that what was being said about appellant was not true, and that John and Harald were simply jealous of appellant. According to appellant's nephew, the other Derrick had also told him (the nephew) that he wanted to tell the truth but he was afraid that his grandmother might punish him.

10. Appellant was found not guilty of four counts of enticement and indecent liberties involving John, and the trial judge declared a mistrial when the jury was unable to reach a unanimous verdict on three counts (enticement involving Alex, and indecent liberties and sodomy counts involving William).

confusion of issues, cumulative testimony, and undue delay)).

■ The parties agree that two of the requisite elements under the prior recorded testimony exception have been met since Oscar Mitchell's grand jury testimony was given under oath and there was an identity of the issues in the two proceedings. *See Thomas, supra,* 530 A.2d at 221 ("[t]he requirement that the parties and the issues be the same in both proceedings is a means of fulfilling the policy of securing an adequate opportunity of cross-examination by the party against whom such testimony is offered"). The nature of the prosecutor's questions to Oscar Mitchell during his grand jury appearance reveals that the identity of issues requirement was met. *See Skyers, supra,* 619 A.2d at 934–35. The prosecutor asked Oscar Mitchell whether he had ever seen appellant touch John in a sexual manner, lie down in a bed with John, or sodomize him, and if he had ever heard appellant ask John to take his clothes off or "lotion up his butt hole." Furthermore, the prosecutor pressed Oscar Mitchell on the nature of the living arrangements in appellant's home and his relationship with appellant as well as the events of February 25, 1989, the day John left appellant's home. In response to questions by grand jurors, Oscar Mitchell expanded on his own non-sexual relationship with appellant and the boys. The questioning of the prosecutor and grand jurors also elicited a motive behind John's accusation that appellant had sexually molested him. Because the questioning was directed at the ultimate issue of appellant's guilt, the issues are properly characterized as the same for purposes of the prior recorded testimony exception.

■ For similar reasons, we also conclude that the government had the requi-site opportunity to cross-examine Oscar Mitchell when he appeared before the grand jury. *See id.* at 934 (" '[a]n adequate opportunity to cross-examine exists if the parties and the issues in both proceedings are substantially the same' ") (quoting *Epstein v. United States,* 359 A.2d 274, 277 (D.C.1976)). In concluding that the prosecutor did not assume an "adversarial, inquiring, searching, and explicative approach in trying to ascertain what lay behind the superficial responses and attitude of the witness," the trial judge did not apply the proper standard, which is not so demanding. While this court has used such terminology in characterizing the cross-examination which actually took place in certain cases, *see, e.g., Alston, supra,* 383 A.2d at 315 (government conducted a "searching inquiry" into the extent of appellant's involvement in crime), that characterization was not meant to be a prescription of what must occur. *See Jones v. United States,* 483 A.2d 1149, 1156 (D.C. 1984) (insufficient opportunity to cross-examine where witness appeared before grand jury for a limited purpose), *cert. denied,* 471 U.S. 1118, 105 S.Ct. 2363, 86 L.Ed.2d 263 (1985); *Epstein, supra,* 359 A.2d at 277 (adequate opportunity exists where issues are the same). Although evaluation of the opportunity to cross-examine must be made on a case-by-case basis,[11] appellant is correct when he maintains that the trial judge applied an improper standard in assessing the opportunity to cross-examine Oscar Mitchell at the earlier proceeding.

Moreover, the prosecutor's actual questioning of Oscar Mitchell before the grand jury "comported with the principal *purpose* of cross-examination: to challenge 'whether the declarant was sincerely telling what

---

11. Justice Blackmun, concurring in a recent Supreme Court decision regarding FED.R.EVID. 804(b)(1), pointed out:

Because "similar motive" does not mean "identical motive," the similar-motive inquiry ... is inherently a *factual* inquiry, depending in part on the similarity of the underlying issues and on the context of the grand jury questioning. It cannot be that the prosecution either *always* or *never* has a similar mo-tive for questioning a particular witness with respect to a particular issue before the grand jury as at trial.... [T]he similar-motive inquiry appropriately reflects narrow concerns of ensuring the reliability of evidence admitted at trial....

*United States v. Salerno,* —— U.S. ——, ——, 112 S.Ct. 2503, 2509, 120 L.Ed.2d 255 (1992) (Blackmun, J., concurring).

he believed to be the truth, whether the declarant accurately perceived and remembered the matter he related, and whether the declarant's intended meaning is adequately conveyed by the language he employed.'" *Ohio v. Roberts,* 448 U.S. 56, 71, 100 S.Ct. 2531, 2541, 65 L.Ed.2d 597 (1980) (quoting David S. Davenport, *The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions: A Functional Analysis,* 85 HARV.L.REV. 1378, 1378 (1972)). Even under Rule 804(b)(1) of the Federal Rules of Evidence, urged upon this court by the government, appellant would still likely prevail. *See, e.g., United States v. Miller,* 284 U.S.App. D.C. 245, 248, 904 F.2d 65, 68 (1990) (grand jury testimony admissible against government because "as several circuits have recognized, the government had the same motive and opportunity to question [the witness] when it brought him before the grand jury as it does at trial"); *United States v. Salerno,* 974 F.2d 231, 237–41 (2d Cir. 1992), *on remand from, Salerno, supra,* —— U.S. at ——, 112 S.Ct. 2503 (finding opportunity to cross-examine at grand jury sufficient and rejecting same policy arguments advanced by government in the instant case).

■ Regarding the final element to be met under the prior recorded testimony exception, the trial judge appeared to accept defense counsel's proffer of Oscar Mitchell's unavailability, but he did not make an explicit finding during the trial. In seeking to introduce evidence under the prior recorded testimony exception, the proponent bears the burden of demonstrating the unavailability of the declarant. *See Ohio v. Roberts supra,* 448 U.S. at 74–75, 100 S.Ct. at 2543–44; *Laumer v. United States,* 409 A.2d 190, 199 (D.C.1979); *Rosario v. Kuhlman,* 839 F.2d 918, 925 (2d Cir.1988) (applying a "good faith effort to locate the witness" standard to defendant seeking to demonstrate unavailability under former testimony exception); *cf. Rosario v. Kuhlman,* 658 F.Supp. 1408, 1414 (S.D.N.Y.1987) (finding that appellant had

satisfied unavailability requirement, noting that trial judge never offered slightest criticism of defense efforts to locate the witness). Defense counsel proffered that he had taken "extensive steps" over a three-month period to locate Oscar Mitchell—including personal investigation as well as having relatives and investigators look for him—and stated that the defense had used "every bit of our effort and good faith" to obtain his presence at trial. However, notwithstanding the government's objection that the defense had not made a sufficient showing of unavailability, the judge chose not to take advantage of defense counsel's offer to present testimony from his investigator on the unavailability of Oscar Mitchell. Indeed, the trial judge stated in denying appellant's motion for new trial based on the exclusion of the grand jury transcript, that he had not made a formal finding as to unavailability:

> Whether or not Mr. Mitchell was actually unavailable is an issue I did not address, the defense interpreted my proceeding to the substantive issues as an ostensible recognition of the unavailability of the witness, the record will speak for itself on that issue, I don't need to add anything else to it.

> Whether or not enough of a showing was made by the defense to render Mr. Mitchell unavailable pursuant to statutory common law or federal rule, will be for the Court of Appeals to decide.

Absent a judicial finding, as well as a sufficient record to assess unavailability, the question remains whether, assuming unavailability, the exclusion of Oscar Mitchell's grand jury testimony can be upheld on some other basis. The judge based his decision to exclude the evidence on three grounds: the absence of a sufficient opportunity for the government to cross-examine Oscar Mitchell when he appeared before the grand jury, the unreliability of Oscar Mitchell's grand jury testimony, and the likelihood of juror confusion resulting from the inability of the jurors to understand Oscar Mitchell's testimony.[12] Under

**12.** In the judge's words:

As I've indicated, the bulk of the grand jury testimony provided was colloquy between Mr.

*Johns, supra,* 434 A.2d at 473, and *Alston, supra,* 383 A.2d at 315, these reasons for exclusion do not withstand scrutiny.

■■■ While the trial judge has discretion under *Johns, supra,* to exclude otherwise admissible evidence on the grounds that it is not competent, relevant, or conflicts with countervailing evidentiary policy concerns, Oscar Mitchell's grand jury testimony did not present any of these problems. The grand jury testimony was relevant to the material issue of appellant's guilt or innocence. *See Johns, supra,* 434 A.2d at 473. It was also competent evidence if Oscar Mitchell was unavailable. *See id.* Nevertheless, the trial judge excluded the transcript, concluding that Oscar Mitchell's testimony was unreliable and that the transcript would not provide the jury with a sufficient opportunity to understand his testimony. The judge explained, in denying appellant's motion for a new trial, that when Oscar Mitchell appeared before the grand jury, he made disparaging remarks about homosexuals, and "in every way he seemed bent on distancing himself from the defendant." The judge also found that Oscar Mitchell's denial that he and appellant had a sexual relationship stood in "stark contrast" to the testimony of other government witnesses, who did or would testify to the existence of such a relationship.[13] Finally, the judge cited as evidence of the unreliability of Oscar Mitchell's testimony the fact that he was appellant's roommate and was "living in a house where young boys were allegedly, frequently and routinely molested, [which] would certainly have seriously undercut

the proper grand jury testimony." The judge concluded:

> Viewing the testimony, even in the light most favorable to the defense, it fails to persuade me ... that it contained even minimal indicators of reliability.... Especially given what I observed and concluded about the credibility of witnesses presented during the trial....

> In varying degrees [the relevant] cases look to the prior proceedings examination, that is cross examination or its equivalent, to assist in establishing a record testimony from which sufficient reliability emerges. In my view Mr. Mitchell's grand jury testimony provided no such assurances.

In *Johns, supra,* 434 A.2d at 473, the court cautioned against confusing the discretion that the trial court has with regard to determining whether evidence is admissible with the " 'credibility and weight to be assigned to competent and admissible evidence.' " *Id.* (quoting *Fowel v. Wood,* 62 A.2d 636, 637 (D.C.1948)). "It is for the jury to decide weight and credibility: 'neither the trial court nor the reviewing court can infringe upon that authority.' " *Id.* (citations omitted). Thus, once statements satisfy the four elements of the prior testimony exception, the necessary 'indicia of reliability' are met and any analysis of the substantive reliability of the testimony is inappropriate. *See Johns, supra,* 434 A.2d at 474 (noting that lack of certainty of a grand jury witness is no basis for exclusion of the testimony); *cf. Rosario v. Kuhlman, supra,* 839 F.2d at 924. As in *Johns, supra,* 434 A.2d at 473, "we conclude that the trial court impermissibly invaded the prov-

---

Mitchell and the grand jury. Transcript speaks for itself. But suffice it to say that upon my review of that transcript the testimony provided therein that Mr. Mitchell's credibility was challenged and damaged during the colloquy of testimony.

He made disparaging remarks about gay people, his reaction to them, and in every way he seemed bent on distancing himself from the defendant and the household's activities. Certainly his testimony stands in stark contrast to the testimony of other Government witnesses who did or would have indicated that Mr. Mitchell and the defendant were closely and intimately acquainted and related. Certainly the fact that Mr. Mitchell was the

defendant's roommate, while living in a house where young boys were allegedly, frequently and routinely molested, would certainly have seriously undercut the proper grand jury testimony.

13. However, the defense was not that appellant did not engage in homosexual relationships. Defense witness Milton Cheeks testified that he and appellant had a homosexual relationship. On the other hand, defense witness Rafael Thomas, age thirty-three, who had also lived in appellant's apartment for a time, denied having a sexual relationship with appellant.

ince of the jury in excluding the grand jury testimony."[14] Although a witness' credibility before the grand jury may be open to question, as appellant concedes, that question was for the petit jury and not the trial judge to decide. *See Ballou v. Henri Studios, Inc.,* 656 F.2d 1147, 1154 (5th Cir. 1981) (trial judge abused discretion in excluding results of blood alcohol test on ground that results conflicted with testimony of another witness; decision "constituted a credibility choice which should properly have been reserved for the jury").

The trial judge's exclusion of the evidence because of "countervailing circumstances" focused on Oscar Mitchell's credibility. In fact, Oscar Mitchell's grand jury testimony was similar to that of Milton Cheeks, a defense witness who had lived in appellant's home and denied having a sexual relationship with him or seeing appellant engage in a sexual relationship with John. *See supra* note 9. That Oscar Mitchell strongly denied that he was a homosexual and that appellant was sexually abusing John, and took some offense at efforts by the grand jury prosecutor to suggest to the contrary, and used the word "faggot,"[15] are not proper bases on which to deny appellant the right to present Oscar Mitchell's testimony as part of the defense case to the jury. Nor was it appropriate to exclude the transcript on the ground that witnesses testified appellant was a homosexual and Oscar Mitchell continued to live with him. A review of the grand jury transcript does not reveal that Oscar Mitchell's denials and explanations were inherently incredible or that he lacked an appreciation of the seriousness of the occasion.

*Cf. Singleton v. United States,* 488 A.2d 1365, 1369–70 (D.C.1985) (defendant's view not inherently improbable).

■ Nor could the trial judge properly conclude, under the circumstances, that the transcript testimony was excludible on the basis of likely juror confusion.[16] This court, as well as the trial court, has often acknowledged the common sense of the jurors and relied on it where difficult questions of harmfulness and prejudice are at issue. *See, e.g., Allen v. United States,* 603 A.2d 1219, 1224, 1227 (D.C.) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 3050, 120 L.Ed.2d 916 (1992); *Lemon v. United States,* 564 A.2d 1368, 1376 (D.C.1989). It is hardly an unusual task for jurors to sort out and choose between evidence by witnesses who give different versions of events, and that is precisely what would have occurred in the instant case had the jurors been presented with the transcript of Oscar Mitchell's testimony. John testified that appellant sexually abused him while Oscar Mitchell was present. Oscar Mitchell not only denied being present during that assault, but he also portrayed appellant as someone who had the boys' interests at heart. In addition, Oscar Mitchell's testimony provided further evidence of the tension that existed between appellant and John immediately before he ran away, and it portrayed John as a troubled boy who was having difficulties at school, most recently for touching a female classmate in a sexual manner (on the buttocks), and who resented appellant for punishing him as a result.[17] Moreover, his initial effort to dis-

---

**14.** Our review of the trial judge's decision to exclude the evidence as unreliable is for abuse of discretion. *Clark v. United States,* 593 A.2d 186, 192 n. 7 (D.C.1991); *Jones v. United States,* 548 A.2d 35, 47 (D.C.1988); *Swinson v. United States,* 483 A.2d 1160, 1164 (D.C.1984). *See generally Johnson v. United States,* 398 A.2d 354 (D.C.1979) (trial court discretion).

**15.** Oscar Mitchell testified, "I don't like faggots. I would bust a faggot face in a minute. And don't even think about it."

**16.** The judge stated, "I find that that testimony would not supply the jury with an opportunity to understand and scrutinize the testimony of

Mr. Mitchell, and that the grand jury testimony will, therefore, not be available for evidentiary purposes at this hearing." He reiterated his concern when he denied appellant's motion for a new trial.

**17.** Oscar Mitchell also testified that John only lived at appellant's apartment during the week and returned on weekends to his grandmother's home. He explained that he assumed responsibility for the young boys in appellant's absence, and he had tried to help John. He also testified that John's school had telephoned appellant and informed him that John was failing and cutting classes and had touched a female classmate in a sexual manner. According to Oscar Mitchell, he

tance himself from what was going on at appellant's home is not so obscure or complex that the petit jury could not scrutinize and evaluate his testimony. The apparent hostility of Oscar Mitchell and his evasive answers to some questions could be explained by the fact that the prosecutor had warned Oscar Mitchell that he was a possible target of the grand jury's investigation and that the government was accusing a person who had taken care of Oscar Mitchell for five years, and whom he viewed as his step-father, of horrible criminal acts with children.[18] The partially corroborating medical testimony left open the identity of the person who had molested John, and it did not rule out that John was involved sexually with people at school or elsewhere. Thus, we perceive no "countervailing circumstances" in the trial judge's analysis as would justify withholding the transcript from the jury.

■ The question remains whether any error in excluding Oscar Mitchell's testimony was harmless.[19] *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Bassill v. United States*, 517 A.2d 714, 716 (D.C.1986). Appellant maintains that Oscar Mitchell's evidence "could have created a reasonable doubt" about the charges made by John, his younger brother Harald, and William, and generally impugned the complainants' credibility. Oscar Mitchell was the only adult witness to the events described by these complainants. He was twenty years old when he appeared before the grand jury, and he told them that he was seeking to finish high school, with appellant's encouragement, and to enter the Park Police academy. His denial that he was ever

present when appellant allegedly molested John directly contradicted John's trial testimony that Oscar Mitchell was a witness to the assault. His testimony offered further support for the view of appellant's relationship to the boys that was presented by the defense witnesses and identified both a motive for John's accusation against appellant and an explanation of why the boys stuck together once John accused appellant. His evidence, therefore, went to material points, *see Rosario v. Kuhlman, supra,* 839 F.2d at 926, and if the jury had credited it, Oscar Mitchell's testimony could have undermined the complainants' credibility with regard to all or some of their charges against appellant. The prosecutor argued to the jury that the case turned on credibility, and that all it took to convict appellant was to believe the boys. Yet the defense was denied the opportunity to present the jury with testimony that directly challenged John's credibility. The fact that appellant presented another witness, albeit not an eyewitness, who denied that appellant had sexually molested young boys is not dispositive. *See Chambers v. Mississippi, supra,* 410 U.S. at 294, 93 S.Ct. at 1045 (noting that "defense was far less persuasive than it might have been" had defendant been given an opportunity to introduce the excluded evidence). Although the government's case consisted of more than one witness, some of the complainants had initially denied that anything happened, and a young defense witness explained why one of the complainants was sticking to his accusations nevertheless. *See supra* note 9. For these reasons, we conclude that Oscar Mitchell's testimony might have caused the jury, which rejected or could not agree on some of the complain-

---

had learned that John deeply resented appellant for punishing him afterwards by not letting him watch television or go out.

**18.** This, as well as conversations that Oscar Mitchell testified had taken place earlier in the prosecutor's office, may also explain why Oscar Mitchell asserted to the grand jurors that he thought that the prosecutor was trying to make him look like a "fool" and a homosexual.

**19.** The trial judge ruled, in denying appellant's motion for a new trial, that any error was harmless. However, his ruling was based on an erroneous legal analysis for excluding the evidence in which the judge, rather than the jury, evaluated the evidence, and the judge did not address the effect that admission of the transcript could have had on appellant's defense at trial. *See Davis v. United States,* 564 A.2d 31, 42 (D.C.1989) (en banc).

ants' allegations, *see supra* note 10, to reject more or all of them.

 Accordingly, we hold that unless the defense fails to demonstrate the unavailability of Oscar Mitchell for purposes of the prior recorded testimony exception, the trial judge erred in excluding the grand jury transcript of Oscar Mitchell's testimony. Because the error could not have been harmless, *cf. Alston, supra,* 383 A.2d at 315 (reversible error to exclude directly exculpatory, "facially exonerating" evidence), we remand the case to the trial court to make a finding on unavailability.[20] Further, because there is no Confrontation Clause barrier at issue here,[21] the unavailability requirement only imposes a general duty of reasonableness and good faith efforts on the part of the defense to secure the witness' presence at trial.[22] The defense was not afforded the opportunity to develop a record on the extent of its efforts to locate Oscar Mitchell.[23] As the record stands, we do not know if the defense went to the witness' last known address, contacted his school or contacted his place of employment; neither do we know if the defense tried to subpoena the witness or obtain any government assistance in locating the witness and, if not, whether there was a reasonable explanation for not doing so.[24] Finally, it is unclear what information the defense obtained from the various sources that were contacted. While no one factor or combination of factors is determinative, these are illustrative of the showing to be made by the proponent of the prior recorded testimony. *See Ready, supra,* 445 A.2d at 990 (defendant must show that he or she "diligently had looked [for the witness]"); *Harrison v. United States,* 435 A.2d 734,

20. We reject appellant's argument that the government is precluded from challenging Oscar Mitchell's unavailability on appeal. Unlike the situation in *Johns, supra,* 434 A.2d at 473 n. 16, the prosecutor did object to the admission of the transcript on the ground that appellant had failed to show that Oscar Mitchell was unavailable.

21. The heavy burden placed on the prosecutor to show a witness' unavailability, *see Ohio v. Roberts, supra,* 448 U.S. at 74, 100 S.Ct. at 2543 ("if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation"), stems directly from the Confrontation Clause requirement of the Sixth Amendment, which is not implicated in the instant case. *See Thomas, supra,* 530 A.2d at 221 (court need not explore constitutional ramifications of denial of confrontation where former testimony of unavailable witness is introduced by the defendant). *See* 2 McCormick on Evidence § 253, at 134–35 (John William Strong, ed., 4th ed. 1992) ("In criminal cases, the showing required of the prosecution with regard to witnesses called against the accused is strict, described as a 'good faith effort,' applicable in both State and federal prosecutions. A lesser showing may be adequate as to defense witnesses in criminal cases and witnesses generally in civil cases, where confrontation requirements do not apply") (footnotes and citations omitted).

22. *See Ready v. United States,* 445 A.2d 982, 989–90 (D.C.1982), *cert. denied,* 460 U.S. 1025, 103 S.Ct. 1279, 75 L.Ed.2d 498 (1983); *Warren v. United States,* 436 A.2d 821, 826–27 (D.C.1981); *State v. Prout,* 115 R.I. 451, 347 A.2d 404, 406 (1975); *State v. Allison,* 202 Conn. 385, 521 A.2d

555, 559 (1987); *State v. Frye,* 182 Conn. 476, 438 A.2d 735, 738–39 (1980) (adopting Fed. R.Evid. 804(a)); *Rosario v. Kuhlman, supra,* 839 F.2d at 925; *see also* McCormick on Evidence, *supra* note 21, § 253, at 135 ("Some authorities, including the Federal Rule [804(a)(5)], require an effort through reasonable means. Others require no more than a showing that the witness is beyond the reach of process") (footnotes omitted); 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 804(a)[01], at 804–48 (1992) ("in civil cases ... inability to procure the declarant's attendance by reasonable means is equivalent to inability to serve a subpoena").

23. Defense counsel proffered that he had taken "extensive steps" over a three-month period to locate Mitchell—including personal investigation as well as having relatives and investigators look for him—and stated that the defense had used "every bit of our effort and good faith" to obtain his presence at trial.

24. These are some of the factors courts have considered in determining whether a defendant has made reasonable efforts to locate a witness whose prior recorded testimony the defendant seeks to introduce on the ground that the witness is unavailable. *See, e.g., United States v. Fenoid,* 949 F.2d 970, 973 (8th Cir.1991) (last known address); *Frye, supra* note 22, 438 A.2d at 738–39 (to witness' apartment, left subpoena with wife with instructions for witness to call; insufficient in absence of effort to serve witness); *State v. Jordan,* 229 Neb. 563, 427 N.W.2d 796, 799 (1988) (subpoena); *United States v. Fernandez–Roque,* 703 F.2d 808, 813 (5th Cir. 1983) (same); *United States v. Pelton,* 578 F.2d 701, 709 (8th Cir.1978) (same).

736 n. 5 (D.C.1981) (en banc) (proponent of prior recorded testimony "would do well to relate carefully and comprehensively for the record at trial its efforts to make the witness available and the reasons such efforts have proved unavailing").[25] Hence, a remand is required so that the trial court can determine whether the defense made reasonable efforts to locate Oscar Mitchell and, therefore, whether he was unavailable to testify at appellant's trial.[26]

## II.

■■■■ Appellant also contends that the trial judge erred in denying his motion to sever under Super.Ct.Crim.R. 14. He sought severance of the seven sodomy counts and three counts of assault with a dangerous weapon involving John and William from the enticement and indecent act counts involving the rest of the boys. Had these counts been severed, appellant maintains that evidence that appellant had tested positive for the HIV virus would not have been admissible in the trial on the enticement and indecent liberties counts.

Under Rule 14, offenses should be severed:

> unless (1) the evidence as to each offense is separate and distinct, and thus unlikely to be amalgamated in the jury's mind into a single inculpatory mass, or (2) the evidence of each of the joined crimes would be admissible at the separate trials of the others.

*Cox v. United States,* 498 A.2d 231, 235 (D.C.1985) (citation omitted). *See also Coleman v. United States,* 619 A.2d 40, 43–44 (D.C.1993). The decision to sever, however, is within the sound discretion of the trial judge, and this court will reverse only "upon a showing of the 'most compelling prejudice.' " *West v. United States,* 599 A.2d 788, 791 (D.C.1991) (quoting *In re S.G.,* 581 A.2d 771, 776 (D.C.1990)). *See Gooch v. United States,* 609 A.2d 259, 264 (D.C.1992); *Winestock v. United States,* 429 A.2d 519, 526–27 (D.C.1981). In opposing appellant's motion to sever, the prosecutor relied on the identity and sexual predisposition exceptions under *Drew*[27] in arguing that the evidence would be mutually admissible. Because the facts of the instant case fall within the scope of the "unusual sexual preference" exception recognized by the court in *Johnson, supra,* 610 A.2d at 730 (citing *Dyson v. United States,* 97 A.2d 135 (D.C.1953) as controlling), we find no abuse of discretion by the trial judge in denying severance of the counts.[28]

---

**25.** *Ready, supra,* 445 A.2d at 990 ("[t]he court need not permit evasion of its evidentiary rules when [the defendant] seeks to admit hearsay, not out of necessity but as a strategy to prevent governmental cross-examination"). *See Rosario v. Kuhlman, supra,* 839 F.2d at 925 ("the purpose of the due diligence requirement [in state statute] is to ensure that the failure to produce the witness was not due to indifference or a strategic preference for presenting [the witness'] testimony in the more sheltered form of … minutes rather than in the confrontational setting of a personal appearance on the stand") (citations omitted).

**26.** If the trial judge finds that Oscar Mitchell was unavailable to be a witness at appellant's trial, then the judge must grant a new trial.

**27.** *Drew, supra* note 1, 118 U.S.App.D.C. 11, 331 F.2d 85.

**28.** Despite appellant's argument that the unusual sexual preference exception applies only to evidence concerning prior sexual conduct between the complainant and the defendant, the court stated in *Johnson, supra,* 610 A.2d at 730, that:

> While Johnson contends that this exception should at least be limited to prior misconduct involving the same victim, there is one case from this court which squarely holds otherwise: *Dyson v. United States,* 97 A.2d 135 (D.C.1953). Indeed, *Dyson* is the only case which expressly holds "that evidence of separate [sexual] acts with different persons may be received in cases of this type." *Id.* at 138. It may well be that *Dyson* would have been decided differently if it had come before this court today rather than thirty-nine years ago. Nevertheless, *Dyson* is binding on us unless and until it is overruled by this court en banc. *See also Adams v. United States,* 502 A.2d 1011, 1015 (D.C.1986) (unusual sexual preference exception extends to acts committed with or against persons other than the present complainant or victim) (citing *Dyson, supra,* 97 A.2d 135). In *Dyson,* a police officer was permitted to testify that the defendant, a male, who was charged with simple assault, had admitted prior sexual conduct with other men, and the court viewed as controlling the exception in *Hodge v. United States,* 75 U.S.App.D.C. 332, 126 F.2d 849 (1942) (in sexual offenses, evidence that at a prior time the defendant was similarly disposed

Accordingly, we remand the case to the trial court to make findings on whether or not the defense made reasonable efforts to locate Oscar Mitchell to testify as a witness at appellant's trial, and if the defense did so, to grant a new trial. Otherwise, if a new trial is not granted, the judge shall make findings, which are appropriate for appellate review, on the defense efforts to locate Oscar Mitchell.[29]

KING, Associate Judge, concurring in part and concurring in the result.

I join Parts I and III of the court's opinion and I concur in the result with respect to Part II.

In this case appellant was charged with numerous sexual offenses committed against seven boys whose ages ranged from approximately ten to eighteen years old. The incidents took place in appellant's home between the summer of 1987 and late February 1989. During the period when the offenses were alleged to have been committed, one Oscar Mitchell, who was in his late teens or early twenties, resided with appellant and, although not related, appellant and Mitchell referred to each other as father and son. On July 13, 1989, Mitchell was called to testify before the grand jury. His testimony contradicted the testimony of some of the victims in several respects.

During the defense presentation at trial, defense counsel, announcing that he could not locate Mitchell, sought the introduction of Mitchell's grand jury testimony. The trial court denied that request principally on the ground that the prior testimony was

unreliable. The majority holds that the trial court erred in so ruling, but remands for further findings with respect to Mitchell's asserted unavailability at the time of trial.

I agree with the holding of the majority that, assuming the trial court erred in not admitting Mitchell's prior testimony, the error was not harmless. I also agree that if the evidence is otherwise properly admissible, a remand is necessary to permit the trial court to make a finding concerning whether the witness was in fact unavailable. Finally, I agree that our case law requires us to conclude that, if the witness was unavailable, the grand jury testimony of Oscar Mitchell should have been admitted. See *Johns v. United States*, 434 A.2d 463 (D.C.1981).[1] In my view, however, *Johns* goes too far in allowing the admission of prior recorded testimony and should be reevaluated especially in light of what I regard to be a more reasonable approach under the Federal Rules of Evidence.

As the majority correctly observes the proponent of the admissibility of prior recorded testimony must show:

(1) the direct testimony of the declarant is unavailable, (2) the former testimony was given under oath or affirmation in a legal proceeding, (3) the issues in the two proceedings were substantially the same, and (4) the party against whom the testimony now is offered had the opportunity to cross-examine the declarant at the former proceeding.

*Alston v. United States*, 383 A.2d 307, 314–15 (D.C.1978). In this case require-

---

is relevant to the mental state of the defendant at the time of the act of which he is charged, and is admissible), as applied in *Bracey v. United States*, 79 U.S.App.D.C. 23, 26–27, 142 F.2d 85, 88, *cert. denied*, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944). *Dyson, supra*, 97 A.2d at 137–38 (admissible to show "intent and lustful disposition").

29. In the event of affirmance thereafter, the court will address the issue of merger of offenses.

1. In *Johns* this court reversed a voluntary manslaughter conviction. The defense of self defense had been raised and the defense had sought to introduce prior recorded testimony of

two unavailable witnesses to show the decedent's violent character. The prior testimony had been presented to a grand jury investigating an unrelated murder charge against the decedent five years before the homicide that led to the charges against Johns. A divided court held, without elaboration, that the prior testimony came within the prior recorded testimony exception to the hearsay rule. *Johns, supra*, at 473 n. 16; *but see Jones v. United States*, 483 A.2d 1149, 1157 (D.C.1984) (without citation to *Johns* upheld the trial court's rejection of prior grand jury testimony of a witness who testified before the grand jury in the same case).

ments 2 and 3 are not in dispute and we agree that a remand is necessary for a determination of unavailability of the witness under the first requirement. Only the last requirement is in dispute, and the majority concludes that since the government had the opportunity to cross-examine Mitchell in the grand jury that was also met.

In the federal courts admissibility of prior recorded testimony is governed by FED. R.EVID. 804(b) which provides:

> The following [is] not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) Former Testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with the law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Thus our precedents permit admissibility if the opposing party had an "opportunity to cross-examine" while in the federal courts admissibility is dependent upon whether the opposing party had both an "opportunity" and a "similar motive" to develop the testimony by cross-examination, or otherwise, in the prior proceeding. The government urges us to adopt the latter formulation; however, in light of *Johns*, I am satisfied that only the en banc court is empowered to do so. *But see Epstein v. United States*, 359 A.2d 274, 278 (D.C. 1976) (upholding denial of admission of prior recorded testimony on the ground that government had no motive to question witness during the prior proceeding concerning the central issue in second proceeding).

In support of its request the government has presented the following in its brief and at oral argument: Oscar Mitchell was known to be personally close to appellant and it was also known that Mitchell would dispute some of the claims made by the victims. Although not required to do so, *United States v. Williams*, —— U.S. ——, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992), the government concluded that it felt itself obligated to present Mitchell's testimony to the grand jury even though government counsel considered it to be a fabrication. At the grand jury Mitchell presented his version of events and he was questioned by some of the grand jurors. The trial judge found, however, that the prosecutor "did not assume an adversarial, inquiring, searching, and explicative approach."

Cross-examination of a hostile witness at that stage of the proceeding, argues the government, would have exposed the status of the investigation and revealed the identity of witnesses against appellant including those who may have agreed to testify in the expectation that their role would not be immediately revealed. In addition, cross-examination might breach the secrecy of the grand jury. Moreover, revealing the government's case to someone close to the alleged perpetrator, could result in threats to witnesses, destruction of evidence, and fabrication of defenses. In short, argues the government, it had no motive whatsoever to cross-examine Mitchell and every reason not to. The best course, from its point of view, was to reveal nothing to the witness by cross-examining him for fear that anything he learned about the government's case would immediately find its way to appellant.

In my view the government should not be forced to question a witness under such circumstances, for the purpose of undermining the witness's credibility, in order to protect itself should that witness become unavailable at some future trial. Adoption of the "similar motive" test would avoid such a result, and if this panel were empowered to adopt it, I would vote to do so.[2]

---

**2.** The majority opines that even if the "similar motive" test were to apply "appellant would still likely prevail." *Ante* at 407. I neither agree nor disagree with that assertion because I do not believe this court can decide that issue on this

record. Since the "similar motive" test was not applied in the trial court, neither party had the opportunity to address the factors that needed to be considered. A determination of whether the evidence should be admitted under that test

On the issue of whether or not the witness was unavailable, I would place a heavy burden on appellant under the facts presented here. At no time before trial did defense counsel inform the court that he had encountered any difficulties in locating the witness. When the trial calendar was called, counsel announced that he was ready for trial and gave no indication that he was unable to locate Mitchell. Indeed during jury *voir dire* counsel remarked: "[W]e may also call Mr. Oscar Mitchell [as a witness]." It was not until the defense began the presentation of its case that counsel informed the court that Mitchell could not be found. The record is silent concerning whether the witness was ever subpoenaed, and counsel informed the court at one point that he had been searching for the witness for three months while at another point counsel said he had been searching for six months.

Under those circumstances one is tempted to suggest that counsel made a strategic decision not to inform the court of his inability to find the witness in the anticipation that presenting the witness's prior testimony would be more effective than presenting the witness himself. A more timely notification would have permitted the trial court to enlist the Marshal Service and perhaps the police department in an effort to locate Mitchell. Ascertaining the possible success of any such efforts at this late date is probably not possible. On remand I would require the defense to show that the whereabouts of the witness were completely unknown before setting aside the verdicts because of the witness's unavailability.

Finally, the government also argues that the prior recorded testimony should be rejected because, as the trial judge found, it was not sufficiently reliable. The panel opinion concludes that the trial judge erred in so finding because such a determination invades the trial jury's right to make credibility determinations. Interestingly, the grand jury had an opportunity to. assess Mitchell's credibility and apparently found it wanting since it chose to indict despite it.

should be made in the first instance by the trial

The trial jury, however, will not get the opportunity to make such a judgment with a live witness if the transcript is admitted. Notwithstanding, I agree that under *Johns* a trial judge may not reject this kind of evidence because its reliability is questionable. That result provides still one more reason for over-turning *Johns*, because, as this case so clearly demonstrates, some discretion should be given to the trial judge to reject evidence of questionable reliability.