751 A.2d 1113 (2000)
331 N.J. Super. 386
The STATE of New Jersey, Plaintiff,
v.
Gino GENTILE and Louis G. Muniz, Defendants.
Superior Court of New Jersey, Law Division, Passaic County.
Decided February 3, 2000.
Ronald S. Fava, Passaic County Prosecutor, for plaintiff (Kevin D. Wronko, Senior Assistant Prosecutor appearing).
Peter L. Festa, Paterson, for defendant Gino Gentile.
DE LUCCIA, J.S.C.
In this case, the court is confronted with a novel issue not previously the subject of any reported decision in this state. The question presented is whether the defendant, Gino Gentile, may be permitted to introduce as evidence at trial, the grand jury testimony of a witness who is now unavailable. Since the proffered grand jury testimony of the presently unavailable witness meets all the requisites of N.J.R.E. 804(b)(1)(A), defendant's motion is granted.
Defendant, Gino Gentile, is presently on trial for murder, attempted murder, second and third degree aggravated assaults and various weapons offenses. On March 30, 1997, a violent encounter between Gentile, the co-defendant Muniz and a group of youths, resulted in the shooting deaths of Nadal Haq and Isaam Atshan, and the wounding of Adnan Ali. Gentile is alleged to be the shooter. Gentile and Muniz fled *1114 the scene after the shootings. Gentile was arrested on April 4, 1997 in Connecticut. Muniz has never been located.
At the time of his arrest, Gentile gave a statement to the police detailing his version of the events of March 30, 1997. In his statement, Gentile does not deny shooting any of the three victims; rather he claims self-defense. Gentile's claim to justification is predicated upon his contention that the two deceased victims, along with Ali and several other young men, instigated the deadly confrontation by first attacking the defendant. Gentile also claims that at least one member of the menacing crowd possessed a gun. The State acknowledges that the proofs in the case will show that at the crime scene the police recovered a knife which was fashioned to resemble a handgun.
Although wounded twice, Ali was apparently not seriously injured. He gave the Paterson Police a sworn statement on April 9, 1997. He also testified before the grand jury which returned the present indictment. In fact, he was the only civilian witness called by the State to testify as to the events of March 30, 1997. All other witnesses appearing before the grand jury were police officers. Statements from other civilian witnesses were introduced through police reports prepared by the police witnesses.
The State intended to call Ali as a witness at the trial. However, Ali was later convicted of robbery and sentenced to prison. When the prosecutor attempted to locate him through the Department of Corrections, he was informed Ali had escaped. His present whereabouts are unknown.
The State made the court and defendant aware of these circumstances shortly before the pretrial conference. Upon learning of Ali's absence, counsel for defendant moved to permit the introduction of Ali's grand jury testimony as direct evidence in his case. Defendant claims that although Ali identified defendant as the shooter in this episode, he also gave testimony concerning events immediately preceding the shootings, which support Gentile's claim of self-defense.
In both his sworn statement of April 9, 1997 and his subsequent grand jury testimony, Ali does provide some evidence from which a reasonable and legitimate inference can be drawn that the members of the crowd, including Ali and the decedents, were the aggressors. Ali also testified that Gentile retreated before the deadly confrontation. The defendant argues that this testimony takes on added significance because apparently none of the State's other witness will testify as to Gentile's apparent retreat prior to the shootings.
Under our court rules a defendant in a criminal matter may obtain a transcript of the testimony of grand jury witnesses without leave of court. See R. 3:6-6(b). Traditionally the use of such hearsay statements at trial has been limited to impeachment of a witness' testimony, refreshing their recollection or testing their credibility. Stewart v. Dexter, 218 N.J.Super. 417, 420, 527 A.2d 958 (Law Div.1986). However, defendant maintains that since Ali is unavailable, his grand jury testimony can be admitted as substantive evidence, that is, proof of the truth of the statements asserted therein. N.J.R.E. 801. Defendant argues that N.J.R.E. 804(b)(1)(A) permits him to utilize Ali's testimony at his trial.
Hearsay evidence is generally not admissible at trial, since it is considered unreliable and untrustworthy. N.J.R.E. 802. However, N.J.R.E. 804 provides an exception to the hearsay exclusionary requirement, applicable in certain circumstances when the declarant is unavailable. N.J.R.E. 804(a) provides that:
a declarant is "unavailable" as a witness if declarant: ... (4) is absent from the hearing because of death, physical or mental illness or infirmity or other cause, and the proponent of the statement is unable by process or other reasonable *1115 means to procure the declarant's attendant at trial.
The rule further provides that when a declarant is found to be unavailable as that term is defined, his or her testimony in prior proceedings may be offered as evidence. Specifically, N.J.R.E. 804(b)(1)(A) provides for the admission of:
testimony given by a witness at a prior trial of the same or different matter, or in a hearing or deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered had an opportunity and similar motive in a prior trial, hearing or proceeding to develop the testimony by examination or cross-examination.
At least one scholarly commentator is of the opinion that N.J.R .E. 804(b)(1)(A) does not appear to sanction the admissibility of grand jury testimony under any circumstances. See Buinno, Current N.J. Rules of Evidence, Comment 2 to N.J.R.E. 804(b)(1)(A) Gann. The author notes that a "contrary suggestion can be found in Stewart v. Dexter, (supra, 218 N.J.Super. at 420, 527 A.2d 958) and the 1991 Supreme Court Committee Comment." Ibid.
In Stewart v. Dexter, supra, the central issue dealt with a request to release grand jury testimony for use in a civil action. In reviewing the reason for disclosure advanced by the moving party, the court, in passing, merely noted plaintiff's contention that he intended to use the grand jury testimony of a presently unavailable witness at trial. The court was not required to nor did it rule that former Evid. R. 63(3), the predecessor to N.J.R.E. 804(b)(1)(A), authorized such a use of grand jury testimony. Id. at 420, 527 A.2d 958.
The 1991 Supreme Court Committee Comment to N.J.R.E. 804(b)(1)(A) appears to suggest that the rule would not permit the admission of grand jury testimony in a criminal case because a defendant, lacking the right to appear and examine witnesses, could not develop the testimony of the witness. The Committee Comment also infers that testimony from a probable cause hearing would be similarly excluded under this rule because "the motive to examine this witness extensively may be lacking or the opportunity curtailed." See Buinno, Current N.J. Rules of Evidence, Gann, at 843-844.
There are two reported Law Division opinions in this state addressing the issue of admissibility at trial of probable cause testimony of an unavailable witness. In State v. Ewings, 154 N.J.Super. 472, 381 A.2d 838 (Law Div.1977), the court concluded that former Evid. R. 63(3)(b) permitted the use of probable cause testimony of an unavailable witness at trial. Id. at 478, 381 A.2d 838. Just over a year later, a different judge in the same vicinage reached a contrary conclusion and barred the State from offering testimony obtained from a witness at a probable cause hearing who was unavailable at trial. State v. Moody, 169 N.J.Super. 177, 404 A.2d 370 (Law Div.1978).
In both Moody and Ewings, it was the State that sought to introduce the probable cause testimony against a defendant in a subsequent criminal trial. The Ewings court resolved the issue primarily on Sixth Amendment, Confrontation Clause grounds as well as the Fourteenth Amendment's due process clause. State v. Ewings, supra, 154 N.J.Super. at 477-478, 381 A.2d 838. In Moody, the court resolved the issue on the basis of questionable comments contained in the 1963 Report of the New Jersey Supreme Court on Evidence, in respect of its recommendations to the Supreme Court regarding the adoption of former Evid. R. 63(3). State v. Moody, supra, 169 N.J.Super. at 180, 404 A.2d 370. See also Buinno, Current N.J. Rules of Evidence, Comment 2 to N.J.R.E. 804(b)(1)(A) Gann.
In this case, it is the defendant, not the State, that seeks to use as evidence the prior grand jury testimony of the unavailable witness. Defendant has waived his *1116 rights under the Confrontation Clause of the Sixth Amendment. Furthermore, the Ewings court's opinion offers little explication on the issue of the defendant's opportunity to confront and cross-examine the witness at the probable cause hearing, other than to note that it was "adequate" to meet constitutional requirements. State v. Ewings, supra, 154 N.J.Super. at 478, 381 A.2d 838. Consequently, neither Ewings nor Moody are helpful in resolving the issue before this court.
This issue has been the subject of conflicting results in other jurisdictions. In People v. Radovick, 275 Ill.App.3d 809, 212 Ill.Dec. 82, 656 N.E.2d 235 (1995), the Appellate Court of Illinois rejected a claim by a defendant charged with murder that he should be permitted to offer as evidence the grand jury testimony of a witness who asserted Fifth Amendment privileges and refused to testify at trial. Under Illinois law, "a witness' previous testimony may be admitted into evidence at trial, as an exception to the hearsay rule, if the witness has become unavailable and the current opponent of the testimony had the opportunity to cross-examine the witness at the earlier hearing." Id. 212 Ill.Dec. 82, 656 N.E.2d at 241. Since both the State and the defendant agreed that the witness' decision to assert Fifth Amendment privileges rendered him "unavailable" for the purposes of the rule, the court only addressed the second element of the Illinois evidence rule. Ibid.
The Illinois court determined that it must consider whether the party opposing admission of the grand jury testimony previously had a "meaningful" opportunity to cross-examine the witness. Ibid. Citing Illinois precedent, the court found that "the focus of the test must be on whether `the motive and focus of the cross-examination at the time of the initial proceeding [was] the same or similar to that which guides cross-examination during the subsequent proceeding.'" (Citation omitted) Ibid.
Although the recalcitrant witness had testified before the grand jury and identified someone other than the defendant being the murderer, the Illinois court concluded that the prosecutor's motive in calling that witness before the grand jury was not necessarily the same had the witness testified at the trial. The court reasoned that since the grand jury is a preliminary stage of an investigation, the prosecutor is not necessarily trying to prove any particular side of an issue but only attempting to develop facts to determine if an indictment is warranted. Ibid. The court speculated that the State may have presented the witness' testimony to the grand jury simply to "lock in" his previous statements implicating someone other than defendant in the murder. The court concluded that "[i]f the state had not yet developed sufficient facts implicating defendant at the time of the grand jury hearing, prosecutors would have little motive to challenge [the witness'] version of events at this time." Ibid. See also U.S. v. DiNapoli, 8 F.3d 909 (2d Cir.1993).
In Feaster v. United States, 631 A.2d 400 (D.C.Ct.App.1993), the District of Columbia Court of Appeals arrived at a contrary conclusion. In Feaster, defendant was charged with committing acts of sexual misconduct with minors. After the government had rested, defendant attempted to introduce the transcript of a witness who testified before the grand jury in lieu of his live testimony. Id. at 403. Defendant claimed that the witness could not be found despite all efforts to locate him for trial. The government objected to the defense' application and the trial court sustained the objection. Defendant was subsequently convicted.
On appeal defendant claimed that his Sixth Amendment privileges had been violated since the grand jury testimony of the unavailable witness should have been admitted under the prior recorded testimony exception of the evidence rules of the District of Columbia. The District of Columbia Court of Appeals agreed.
*1117 The court stated that in order for hearsay evidence to be admissible under the prior recorded testimony exception, the proponent of the evidence must establish that: (1) the direct testimony of the declarant is unavailable; (2) the former testimony was given under oath or affirmation in a legal proceeding; (3) the issues in the two proceedings were substantially the same; and (4) the party against whom the testimony is now offered had the opportunity to cross-examine the declarant at the former proceeding. Id. at 405. Once these four elements have been established, the trial court, in its discretion, may exclude the evidence if it determines the probative value is outweighed by its prejudicial effect. Ibid.
The District of Columbia Court of Appeals found that the second, third and fourth elements of the evidence rule had been satisfied respecting the use of the witness' grand jury testimony. The government and defendant were in agreement as to the existence of two of the requisite elements; the witness' testimony having been given under oath before the grand jury and the identity of issues in the two proceedings. Id. at 406. Since it was conceded that the witness testified before the grand jury under oath, the court then addressed the remaining three elements.
The court found that the missing witness had resided with defendant at the time the government claimed the defendant had committed sexual misconduct with the minors. During his grand jury appearance, the prosecutor specifically asked the witness whether he had ever observed defendant engage in specific sexual misconduct with one victim. The prosecutor also explored the witness' relationship with defendant as well as his living arrangements in the defendant's home. Additionally, the prosecutor and the grand jurors had elicited from the witness a potential motive for possible false accusations by the victim. Ibid. The District of Columbia Court of Appeals stated that "(b)ecause the questioning was directed at the ultimate issue of [defendant's] guilt, the issues are properly characterized as the same for the purpose of the prior recorded testimony exception." Ibid.
The District of Columbia Court of Appeals also found that the government had the requisite opportunity to cross-examine the witness when he appeared before the grand jury. Ibid. The trial court found that at the grand jury, "the prosecutor did not assume an `adversarial, inquiring, searching, and explicative approach in trying to ascertain what lay behind the superficial responses and attitude of the witness.'" Ibid. The District of Columbia Court of Appeals found the trial court utilized an improper and a more restrictive standard than that which the rule required. Ibid. The court concluded that whether an adequate opportunity to "cross-examine exists is a fact-sensitive issue to be made on a case-by-case basis." Ibid. "Similar motive" does not translate into "identical motive." Id. at 406 n. 11 citing United States v. Salerno, 505 U.S. 317, 326, 112 S.Ct. 2503, 2509, 120 L.Ed.2d 255 (1992) (Blackman, J., concurring).
The court found the prosecutor's actual questioning of the witness before the grand jury consistent with the central purpose of cross-examination; i.e. to challenge the declarant's sincerity as to his belief in the truthfulness of his testimony, to probe his perceptions and recollections and to assess his ability to observe, recollect and relate. (Citations omitted) Ibid. However, since the record did not disclose whether the witness was actually unavailable, the court remanded the case to the trial court to make factual findings on that issue. The court ruled if the trial court found the witness' absence satisfied the unavailability test, then a new trial was ordered. See also People v. James, 242 A.D.2d 389, 661 N.Y.S.2d 273 (App.Div.1997).
In United States v. Salerno, supra, the United States Supreme Court ruled that before grand jury testimony of an unavailable witness could be introduced at trial by defendant, the proponent of the testimony *1118 would have to satisfy the "similar motive" requirement of F.R.E. 804(b)(1). In Salerno, the parties agreed, and the Supreme Court did not dispute, that the unavailable witnesses' grand jury testimony qualified under F.R.E. 804(b)(1) as "testimony given as a witness at another hearing ..." United States v. Salerno, supra, 505 U.S. at 321, 112 S.Ct. 2503.
F.R.E. 804(b)(1) is an exception to the federal hearsay exclusionary rule when a declarant is unavailable as a witness. The section of the rule construed by the Supreme Court in United States v. Salerno, supra, provides as follows:
The following are not excluded by the hearsay rule if declarant is unavailable as a witness: (1) Former testimony. Testimony given as a witness at another hearing of the same or of a different proceeding.... if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. F.R.E. 804(b)(1).
The language in F.R.E. 804(b)(1) and N.J.R.E. 804(b)(1)(A) in respect of a prior proceeding or hearing is virtually identical. While our current rules of evidence do not completely mirror their federal counterparts, the 1991 Report of the New Jersey Supreme Court Committee on the Rules of Evidence noted that "in general, we have adopted the substantive language of the federal rules when we consider them equal to or better than our present rules." See Buinno, Current N.J. Rules of Evidence, Gann, at x. No compelling reason has been advanced to construe differently N.J.R.E. 804(b)(1)(A) from F.R.E. 804(b)(1) in respect of the inclusion of grand jury testimony within the scope of this hearsay exception.
This court is persuaded that the reasoning employed and the results obtained by the District of Columbia Court of Appeals in Feaster v. United States, supra, is consonant with the fundamental right of a defendant to receive a fair trial. "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." Chambers v. Mississippi, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). Accordingly, it follows that a defendant's right to call witnesses in his own behalf has long been recognized as essential to due process. Ibid. These fundamental principles are at the core of our jurisprudence.
This court is satisfied that all the conditions governing admissibility under N.J.R.E. 804(b)(1)(A) of Ali's grand jury testimony have been satisfied. The State and the defendant both agree that Ali is presently unavailable and that it is highly improbable that he will be located prior to trial. Ali's testimony, under oath, was given before a grand jury convened to consider the potential criminal liability of defendant Gentile in respect of the assaults and weapons offenses committed against Ali as well as the two decedents. The grand jury proceeding qualifies as a "hearing ... taken in compliance with law in the course of the same or another proceeding." N.J.R.E. 804(b)(1)(A).
The real issue requiring resolution is whether the State, during its presentation of Ali's testimony before the grand jury, had both the opportunity and a similar motive to examine the exculpatory portions of Ali's testimony before that body. This court is satisfied that the State had both.
Ali was the only civilian witness summoned before the grand jury. Prior to his appearance, the State had available to it his April 9, 1997 statement given to the Paterson Police, in which he first mentioned the aggressive actions he and his companions took against the defendant prior to the shootings. He also stated that when he confronted Gentile, the defendant walked away from the encounter before any shots were fired.
At the grand jury, the prosecutor not only elicited the same testimony from Ali, but he further expanded upon Ali's observations *1119 respecting the shooting death of one of the two victims. According to Ali's grand jury testimony, Haq, the first victim killed by Gentile, was standing erect when he was shot by Gentile, who he claimed was in a kneeling position. This is a critical detail since other State witnesses will testify that Haq was either lying in the street or crouching when he was shot by Gentile, who stood above him as he fired his weapon downwards into the back of the victim's head. The State's theory of the case is basically, that Gentile executed Haq when he was in a prone and helpless position. Forensic medical evidence will be offered detailing the location of the entry and exit wounds which, the State will argue, are consistent with its theory.
However, if the jury accepts Ali's version, it will then lend support to the defense theory that Gentile was being attacked by Haq when he shot in self-defense. It will also support the defense's explanation as to why the entrance and exit wounds are consistent with a claim that defendant fired from a kneeling position upwards toward the victim who was attacking him.
Additionally, Ali's testimony respecting the shooting of Haq, the first victim, describes Haq as trying to "go for the defendant" after the first shots were fired at Ali. He also testified that Gentile apparently struck Haq in the head with his weapon after Haq rushed him, but before he was shot.
All of this potentially exculpatory testimony was elicited by the prosecutor at the grand jury, where Ali was a captive witness. Moreover, by the time this matter was presented to the grand jury, the investigatory stage of the case was completed. The State's case against Gentile was essentially established. Since the prosecutor had a detailed statement from Gentile prior to the grand jury presentation, and knew that Gentile claimed self-defense, the prosecutor had both the opportunity and the motive to test Ali's recollection on the critical aspects of the events which preceded the shooting of Haq, thus neutralizing Gentile's potential defense. Consequently, this court is satisfied that all of the requisite preconditions set forth in N.J.R.E. 804(b)(1)(A) have been met in respect of Adnan Ali's grand jury testimony. Defense counsel and the prosecutor are directed to review the transcript of Ali's testimony before the grand jury and reach an agreement to redact any irrelevant and other objectionable portions. In the absence of agreement, the court will rule on those portions requiring redaction before the transcript may be used as evidence in this trial.